## SOUTHERN KANSAS RAILWAY COMPANY OF TEXAS ET AL. V. A. G. CRUMP.

### Decided April 11, 1903.

**1.—Live Stock Shipment—Measure of Damages—Market Value.**

The measure of damages for delay, etc., in transporting cattle to market is the difference between their market value on the day they should have arrived and their value on the opening of the market after their arrival, where they arrive on a day on which there is no market or after market hours are over.

**2.—Same—Identity of Railroads—Agency.**

Where plaintiff sued two railroads for injury to his cattle during shipment, alleging that although the two were separately incorporated, they were in fact an entirety and under one management and control, and that the initial carrier was but the agent of the other, in whose interest it was organized, incorporated and operated, the liability of both roads was based on their alleged identity, and not merely on the relation of principal and agent.

**3.—Same—Evidence—Opinion.**

Where defendant claimed that delay in the transportation of the cattle was due to a violent snowstorm and its engineer on the cattle train testified to all the facts connected with the delay, and that he uncoupled his engine and took it to the relief of a passenger train ahead, so as to clear the main line, and why he did so, his further statement of the opinions of others present and with whom he consulted as to the necessity for his action was properly excluded.

**4.—Same—Hearsay—Res Gestae.**

Testimony by a witness for defendants that it was reported at the time of the snowstorm that the railroad superintendent had started to the blockade and had gotten to a point where he could not get running orders because the wires were down, and was therefore compelled to return, etc., was properly excluded as hearsay, and as forming no part of the res gestae.

**5.—Same—Pleading—Issue Raised.**

Where plaintiff alleged that defendants had not exercised proper care in the construction of their water tanks, pipes, troughs, etc., for watering cattle, and the answers of the defendants set forth their agreement to stop the cars in which plaintiff's cattle were shipped at any station for watering and feeding wherever there were facilities for so doing, this was equivalent to an allegation that that they had such facilities, and made that an issue in the pleadings.

**6.—Same—Charge.**

A requested charge to the effect that neither of the defendant roads was liable for damages resulting from any acts of negligence on the part of plaintiff "or other parties in charge of or feeding and watering or hauling said cattle," etc., was properly refused as not limiting such negligence to the acts of plaintiff or his representatives.

**7.—Judgment and Verdict—Joint Defendants.**

Where in an action against two railroads the verdict found a joint liability against both defendants, it was not error for the judgment to decree a joint and several liability. Following Kuykendall v. Coulter, 7 Texas Civ. App., 399.

Appeal from the District Court of Armstrong. Tried below before Hon. H. H. Wallace.

*Browning, Madden & Trulove,* for appellants.

*Ira Webster* and *Turner & Boyce,* for appellee.

SPEER, Associate Justice.—The petition sought to recover against the Southern Kansas Railway Company of Texas and the Atchison, Topeka & Santa Fe Railway Company damages for injuries to a shipment of cattle from Washburn, Texas, to Kansas City, in the State of Missouri. It was alleged that the two roads, although separately incorporated, were in truth and in fact an entirety, and all under one management and control, and that in truth and in fact the Texas corporation was but the agent of the other, in whose interest it was organized, incorporated and operated. The negligence alleged consisted of unreasonable delays, rough handling and failure to feed and water, upon the part of both defendants, in consequence of which it was alleged that the cattle lost in weight 50 pounds per head, in value 25 cents per 100 pounds, in decline in market 25 cents per 100 pounds, and required extra feed and yardage.

The petition discloses that the cattle reached Kansas City on Thanksgiving day, and there being no market on that day, they were necessarily held over and sold on the following day. Appellants make the point that the market on the day of the sale should not control in measuring the damages. We think this position not well taken. The market value of the cattle upon their arrival at market means the price they will bring when the market is opened. It would not do to say that because the shipment of live stock reached market at a time other than the office hours of the buyers, they therefore had no market value. Special exception number 4 was properly overruled.

Nor is there any merit in the next contention to the effect that the petition did not allege facts showing the liability of the Texas company. It is ordinarily true that the principal is only liable in damages for the agent's nonfeasance or omissions of duty in the course of employment, but that principle has no application here. The case shown is more than a nonfeasance; it is a misfeasance. The agent actually undertook the transportation of appellee's cattle, and must be held to the exercise of reasonable care in the manner of discharging this duty. Kenny v. Lane, 36 S. W. Rep., 1036. Furthermore the liability of both companies is based upon the alleged identity of the two roads, and not upon the relation of principal and agent only. So that, in any event, the special exception raising this question should have been, as it was, overruled. Buie v. Chicago R. I. & P. Railway Co., 95 Texas, 51, 65 S. W. Rep., 27.

We think the court was right in admitting the testimony of the appellee, and of the witnesses Witherspoon, Ripley, Freeman, Willingham, Jarrett, Pryor, Lester and Conway, complained of in the fourth, fifth, sixth, seventh, eighth, ninth and tenth assignments of error. All of the testimony was sufficiently responsive to the issues raised by the pleadings.

There was evidence tending to show that the delay at Panhandle, on the line of the Texas road, was caused by a snowstorm, and appellants complain that the court below was in error in refusing to permit them

to prove by the witness Pryor, the engineer who pulled the train in question from Washburn to Panhandle, that it was reasonably necessary, and seemed to all present, after consultation at Panhandle, after he arrived there, to be the only rational thing to do, to take the engine with which he had brought the cattle in question from Washburn to Panhandle, and go down and assist in relieving the blockade and in clearing up the main line, so that traffic could be resumed and trains moved in their regular order. The witness did testify that he took the train no further on account of the trains being blockaded ahead, and that he left Panhandle as the lead engine coupled ahead of the passenger train in obedience to a message to go to the relief of the blockading trains. He was permitted to testify fully as to all the facts connected with the delay, as to what he did and why he did it. This was quite far enough. It was proper to allow the jury to say whether or not this conduct in taking his engine to the relief of the trains ahead and in abandoning his train of cattle was reasonably necessary. But if it be conceded that he could give his own conclusions in the matter, certainly he could not testify as to the opinions of the other persons present with whom he consulted.

So, also, was the proffered testimony of the witness Jarrett, to the effect that it was generally understood and reported at the time of his trouble when the blockade was supposed to be in existence and the storm raging, Mr. Dolan was reported to have started to the blockade and had gotten to a point where he could not get running orders because the wires were down and was therefore compelled to return, etc., properly excluded, since, if such were the facts, Mr. Dolan, or some other prson who knew them to be true, should have been called to testify. As offered, the testimony was hearsay. It did not constitute any part of the res gestae, as contended for appellants. Furthermore, the bill taken to its exclusion does not show what objection the court sustained. It may have been a proper one. Grinnan v. Rousseaux, 20 Texas Civ. App., 19, 48 S. W. Rep., 781.

The assignment based upon the alleged error of the court in permitting Judge Moore to testify that he thought Eli Titus was general live stock agent of the Santa Fe Company, is without merit, since it is undisputed that Eli Titus is such agent of the Santa Fe, and has been since 1893.

Appellants complain in the fourteenth, fifteenth and sixteenth assignments of various paragraphs of the court's charge submitting to the jury the question of the joint liability of the two roads by reason of their alleged identity. It is sufficient answer, we think, to any objection that has been urged to the charge in this particular to say that the evidence conclusively shows that the Southern Kansas Railway Company of Texas and the Atchison, Topeka & Santa Fe Railway Company, in so far as this transaction is concerned, are one and the same, save in name only, and the court might safely have summarily instructed the jury to that effect, instead of submitting the question to them as he did. Buie

v. Railway Co., supra; San Antonio & A. P. Railway Co. v. Griffin, 20 Texas Civ. App., 91, 48 S. W. Rep., 542; Terrell v. Russell, 16 Texas Civ. App., 573, 42 S. W. Rep., 129.

In the seventeenth assignment it is insisted that the court erred in submitting to the jury appellee's special charge number 1, to the effect that it was the duty of appellee to feed and water his cattle, provided reasonable facilities were furnished him by the carrier, and that for any damages he may have sustained by reason of the failure of appellants to furnish such facilities as they could by the exercise of ordinary care have done, he might recover, because such issues were not made by the pleadings. But we think otherwise. In appellee's supplemental petition it is specifically alleged that the appellants had not exercised due and proper care in the construction of their water tanks, pipes, troughs, etc., and each appellant's answer sets forth its agreement to stop the cars in which said stock were shipped at any of its stations for watering and feeding, wherever it had facilities for so doing, whenever requested so to do in writing by appellee or his shipper in charge. This we think sufficient to authorize the charge. The allegations of appellants were equivalent to an allegation that they had such facilities, and was therefore an issue in the pleadings.

Special charges numbers 4 and 10 requested by appellants were properly refused, because they excluded from the consideration of the jury the question of the identity of the two roads. Special charge number 6 was sufficiently embraced in special charges numbers 2 and 3 given at the request of appellants, to the effect that appellants would not be liable for damages for slow running between Washburn and Panhandle, or for delay at the latter place, if occasioned by an unusually severe storm without any concurring negligence on the part of the appellants.

The eighth special charge, if given, would have excused appellants for the negligence of its own employes in watering, feeding and hauling the cattle. It was in words, "that neither of defendants herein, under the pleadings and evidence, can be held liable for damages resulting from any acts of negligence, if any, on the part of plaintiff or other parties in charge of or feeding and watering or hauling said cattle," etc., and was properly refused. It was of course in the mind of counsel in framing the requested charge to limit the negligence therein mentioned to the acts of plaintiff and his representatives, but the language employed is not thus explicit.

The twenty-third assignment, complaining of language used by counsel for appellee in his closing argument, presents no error. The court instructed the jury to disregard the remarks outside the record, which, under the circumstances as disclosed by the bill, was sufficient.

The twenty-fourth assignment of error complains that the verdict and judgment are contrary to and not supported by the law and the evidence in numerous particulars therein mentioned. We conclude, however, as already stated, that the evidence conclusively shows the

identity of the two roads; that it further shows that the injury to appellee's cattle was caused by the negligence of appellants as set forth in the petition, and not by any act of God or of appellee, and that there was evidence showing both the market value of the cattle at the time and in the condition they were in when they arrived in market, and at the time and in the condition they would have arrived in but for the negligence of appellants, as well also as the amount of appellee's loss thereby.

There is no merit in the twenty-fifth assignment of error, which is that "the judgment of the lower court is erroneous and is unsupported by the verdict of the jury in this, that the verdict finds a joint liability only as against both defendants, while the judgment decrees a joint and several liability as against the defendants jointly and severally." Kuykendall v. Coulter, 7 Texas Civ. App., 399, 26 S. W. Rep., 748, and authorities there cited.

The twenty-sixth and final assignment is that the verdict and judgment are excessive and unconscionable. The recovery was for $952.47, with interest at the rate of 6 per cent per annum from November 25, 1898, and we think the evidence amply sufficient to support the same.

Our conclusions upon the foregoing assignments necessarily dispose of the three additional assignments made by appellant the Atchison, Topeka & Santa Fe Railway Company.

We have carefully examined the numerous assignments of error contained in the record, and are of the opinion the judgment is free from error and should be affirmed.

*Affirmed.*

Writ of error refused.