GULF PRODUCTION COMPANY V. CHESTER QUISENBERRY.

No. 6660.   Decided October 28, 1936.
Rehearing overruled December 2, 1936.
(97 S. W., 2d Series, 166.)

348

*John E. Green, Jr.,* of Houston, *Peveril O. Settle* and *Wm. L. Wise,* both of Fort Worth, and *Harrell & Allison,* of Breckenridge, for plaintiff in error.

An oil company is not charged with the duty of protecting immature children of their employees, who live on the premises, from coming in contact with machinery and other equipment of said company, when the children are under the direct control of their parents at all times and there is no evidence that the parents have abandoned them, as the true rule is that it is the duty of the parents to protect such children from these dangers under the circumstances, and not the owner of the premises. Blossom Oil & Cotton Co. v. Peteet, 104 Texas, 230, 136 S. W., 432; Magnolia Pet. Co. v. Porter, 22 S. W. (2d) 695.

Plaintiff cannot recover because of the attractiveness of an object on which he was injured unless it was such attractiveness that led him to trespass upon the premises, and it was error for the Court of Civil Appeals to hold that a jury question of liability was presented when the sole ground of invitation claimed by plaintiff was that the rack and frame on which he was injured was an attractive and dangerous instrument and there being no evidence that plaintiff was led to trespass because of such attraction, when he in fact was already trespassing when he and his companion conceived the idea. Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas, 60, 41 S. W., 62; Stimpson v. Bartex Pipe Line Co., 36 S. W. (2d) 473; Stamford Oil Mill Co. v. Barnes, 103 Texas, 409, 128 S. W., 375.

*Frank S. Roberts,* of Breckenridge, for defendant in error.

The plaintiff was an invitee upon the premises, and the fact that his father told him to stay away from anything that looked dangerous would not establish contributory negligence

on the part of this five-year-old boy, nor would that fact preclude him from recovering damages inflicted through the carelessness or gross negligence of defendant who maintained an unguarded dangerous instrumentality which might injure some child climbing upon it and playing around it. Garrett v. Sinclair Refining Company, 94 S. W. (2d) 1218; Texas-Mexican Railway Co. v. Garcia, 216 S. W., 1108; Texas-Louisiana Power Co. v. Bihl, 66 S. W. (2d) 672; Texas Public Service Co. v. Laughead, 73 S. W. (2d) 925.

MR. PRESIDING JUDGE RYAN delivered the opinion of the Commission of Appeals, Section B.

The Court of Civil Appeals at Eastland reversed a judgment of the District Court of Stephens County, based upon an instructed verdict for defendant Gulf Production Company, and remanded the cause upon the theory that the evidence raised material issues of fact which should have been submitted to the jury. 63 S. W. (2d) 248.

Writ of error was granted on an alleged conflict of decisions stated in the application therefor.

This suit was brought by Chester Quisenberry, a minor, through his father L. E. Quisenberry, as next friend, against the Gulf Production Company, for damages sustained by the minor while playing upon a frame insecurely placed on a tubing rack, which rack and frame, it was alleged, constituted together an inherently dangerous instrumentality attractive to children of immature years.

We quote statement of the case made by the Court of Civil Appeals, viz:

"The accident occurred in June, 1927, at or near a camp maintained by appellee for its employees on the Ward lease in Stephens County. Appellant's father went to work for the appellee in 1920, and continued as its employee until in July, 1926. On August 23, 1926, he was re-employed by the company, and, together with his family, moved into a house located in what is commonly called an oil camp. There were several houses in this group situated near each other, with no fences separating them. In the vicinity of these houses, and about 100 yards from the house occupied by the Quisenberrys at the time of the accident, there was a rack about 3½ feet high and 14 feet long, used primarily as a place on which to keep tubing and rods, upon which rack was stored a frame used on trucks and trailers for hauling tanks of oil. This frame was about the width of a truck bed and was longer than the rack. It was

constructed of 2x6 lumber and iron rods and strips. Its estimated weight was from 600 to 800 pounds. It was not resting securely upon the rack, but was placed diagonally across it in such manner that it would rock when a child got upon it. On the day of the accident, Chester, who was then five years old, and his cousin, Hoy Brown, six or seven years old, climbed upon this rack and frame to play. They got on the frame and began to rock it, and, as it overturned, Chester struck the ground first, and the frame fell upon his head, inflicting the injuries for which damages are sought. There was no inclosure about any of the premises, except the landowner's pasture fence, which inclosed the large tract of land on which the camp was located. There is some conflict in the evidence as to the immediate occasion of the boys being at this rack. L. E. Quisenberry, the father, testified that a short time before the accident he discovered the boys playing in an old cellar some distance beyond the rack from the house, and directed them to go back home. He went on about his work as a pumper on a well a mile or more distant, and did not observe the boys to obey his command. Q. P. Quisenberry, an older brother of Chester's, testified that his mother sent him to the site of this old cellar to tell the boys to come to supper, and that, in going home, the boys, who were about 100 yards ahead of him, climbed upon this rack, and the accident occurred just as he arrived on the spot. Chester did not testify, but the boy who was with him, Hoy Brown, denied that the father had commanded them to leave the cellar, denied that Q. P. found them there and told them to come to supper, said that it was not supper time, and they were not on their way to supper, but that they were out searching for a good place to play, and found this rack and frame, which was convenient to climb upon, and got on it to play. Insofar as this evidence conflicts, we must consider it in the light most favorable to appellant.

"There was evidence that children had played around this frame, with the knowledge of the 'gang-pusher', who was in charge of the premises, prior to the time of this accident, but no evidence that any children had theretofore played on this frame or rack. Appellant's father knew of the unsafe position of this frame upon the rack, and notified the gang-pusher of the fact more than once. The frame was so heavy that he himself could not move it over on the rack and make it secure. It was his duty, when he discovered an unsafe condition which he himself could not remedy, to notify the gang-pusher. A short time before the accident, Quisenberry moved his family

from one of the houses farther away from the rack to the house nearest it, and within about 100 yards thereof."

In, addition to the above statement, attention may be called to the following testimony in the record:

There were about eight houses with families living at the camp, also a tool house bout 100 yards from Quisenberry's house. Roads ran in front of the houses, one passed within four or five feet of the Quisenberry house and led to the tool house where workers met every morning, and another ran between the tool house and rack. About 70 or 80 feet from the tool house was a 1600 barrel water tank approximately 20 feet high with steps to the top, adjoining which was a 30 barrel condensing tank from which the parties obtained water. The oil rack was between 50 and 70 feet north of the tool house, and a tubing spool approximately 14 inches high was at one end of the tubing rack, which might be used as a step and aid for climbing upon the tool rack.

OPINION.

■ As a general rule an owner or occupant of real property is under no obligation to make it safe for the benefit of trespassers, intruders or mere licensees coming upon it without his invitation, express or implied, but if he invites the public or particular members thereof to come upon his premises he owes such persons the duty to have same in a reasonably safe condition and to give warning of concealed .or latent perils. Texas-La. Power Co. v. Webster, 127 Texas, 126, 91 S. W. (2d) at p. 306; Bustillos v. S. W. Portland Cement Co. (Com. App.), 211 S. W., 929.

■ The child was not a trespasser, intruder or licensee upon the premises. He lived with his father, a rent paying tenant and employee of the company, in a house furnished by the company to its employees, on the company's premises, with access to the entire premises and use thereof for all usual and incidental purposes. This child had a right to be on the premises and therefore was an invitee.

The company knew that its tenant employees' children travelled and played over the entire property unrestricted so far as fencing or segregation is concerned, and was bound to use the care of an ordinarily prudent person knowing of conditions likely to produce death or serious bodily injury to parties lawfully coming on the premises, which it necessarily must have foreseen in the case of children of its tenant workers who wan-

dered and played all over the property. Townes, Liability arising from dangerous premises (1922), 1 Tex. Law Review 1.

■ Negligence was charged to the company in maintaining the condition above described when it knew that children lived in that vicinity and played about the premises and would probably be attracted to climb on to the rack and be injured thereby. It is insisted that the tilting or seesawing of the rack was not the attraction which drew the child and his young cousin to the rack and frame, but it is conceded in the application for writ of error that if the duty be imposed upon the company to keep the rack and frame in a reasonably safe condition for children to play, the fact of the insecurity of the frame upon the rack might become material upon the issue of negligence but not upon the attractiveness of the object as a whole.

The basis for recovery must be the company's negligence. If, therefore, the company was negligent in permitting the rack and frame in their then condition and injury result to an invitee ought to have been foreseen, (which would be a question for the jury), plaintiff should recover unless he was contributorily negligent and injury resulted from such contributory negligence, which would also become a jury question, if we concede that a five-year-old child was capable of appreciating the danger involved.

It may be presumed that a child of very tender years, as a matter of law, has not sufficient discretion to appreciate dangers that would be obvious and apparent to one of mature age. 30 Tex. Jur., p. 883, Sec. 195.

In Mexican Cent. Ry. Co. v. Rodriguez, 133 S. W., 690, Chief Justice James expresses the doubt that in any case a child five years of age can be charged with contributory negligence, and certainly not unless there is testimony of such intelligence and realization of danger as would indicate that the child was conscious of the consequences of its conduct.

Liability is sought to be predicated upon the "attractive nuisance doctrine" which had its origin in the "turntable cases" and which the courts have held to apply in all cases where children of tender or immature age are invited by an "attractive nuisance" to place themselves in a position of danger. Johns v. Fort Worth Power & Light Co., 30 S. W. (2d) 549 (error refused); McCoy v. Texas Power & Light Co. (Com. App.), 239 S. W., 1105; Duron v. Beaumont Iron Works (Com. App.), 7 S. W. (2d) 867. Said Judge Leddy in the latter case:

"The theory of liability under the attractive nuisance doctrine is that, where the owner maintains a device or machinery on his premises of such an unusually attractive nature as to be especially alluring to children of tender years, he thereby impliedly invites such children to come upon his premises, and, by reason of such invitation, they are relieved from being classed as trespassers, but are in the attitude of being rightfully on the premises. Under such circumstances, the law places upon the owner of such machinery or device the duty of exercising ordinary care to keep such machinery in reasonably safe condition for their protection, if the facts are such as to raise the issue that the owner knew, or in the exercise of ordinary care ought to have known, that such children were likely or would probably be attracted by the machinery, and thus be drawn to the premises by such attraction. Sioux City & P. R. Co. v. Stout, 17 Wall., 657, 21 L. Ed., 745; Union Pacific R. Co. v. McDonald, 152 U. S., 262, 14 S. Ct., 619, 38 L. Ed., 434; Heller v. New York, New Haven & H. R. Co. (C. C. A.), 265 F., 192, 17 A. L. R., 823."

It is insisted that the duty of protecting the child from injury by coming in contact with lease equipment and machinery under the facts of this case, rested upon the parents and not upon the company.

■ If it be conceded that the parents were negligent in not always being in the child's immediate presence and controlling his every movement, such negligence of the parent is not imputable to the child to bar the latter's recovery. Galveston, H. & S. A. Ry. Co. v. Moore, 59 Texas, 64; Western U. Tel. Co. v. Hoffman, 80 Texas, 420, at p. 424, 15 S. W., 1048, 26 Am. St. Rep., 759; Williams v. Texas & P. R. R. Co., 60 Texas, 205; Gulf, C. & S. F. Ry. Co. v. McWhirter, 77 Texas, 356, at p. 361, 19 Am. St. Rep., 755; Wininger v. Fort Worth & D. C. Ry. Co., 105 Texas, 56, 143 S. W., 1150.

We think the case should have gone to the jury as the Court of Civil Appeals correctly held, and therefore its judgment is affirmed and the cause is remanded to the trial court.

Opinion adopted by the Supreme Court October 28, 1936.

Rehearing overruled December 2, 1936.