## CORNETT v. HARDY.
### No. 4702.

Court of Civil Appeals of Texas. Beaumont.
May 17, 1951.

Rehearing Denied June 20, 1951.

Kemper, Wilson & Schmidt, Houston, for appellant.

Campbell & Foreman, of Livingston, Allen, Smith, Neal & Lehmann, of Houston, for appellee.

COE, Chief Justice.

This is a public liability case wherein a $20,000 judgment was entered on a jury verdict in favor of appellee, a filling station operator, against appellant, a business invitee at appellee's filling station and an employee of a truck owner for damages for personal injuries sustained by appellee while placing air in a truck tire allegedly mounted on a defective rim.

The case was tried to a jury and in answer to the special issues submitted by the court, the jury found, first, that the rim holding the tire on a dual wheel that blew off when appellee Hardy was undertaking to air the same had become in such a defective condition that it would blow off on its own accord; second, that appellant Cornett was aware of this fact at the time and before he drove into the filling station of appellee to have the tire aired; third, that appellant failed to warn appellee of the defective condition of said rim when asking him to air the tires; fourth, that such failure was negligence and, fifth, that such negligence was the proximate cause of appellee's injuries and assessed his damages at $20,000. Appellant has brought forward seven Points of Error under which it contends that the trial court erred, first, in failing to grant appellant's motion for in-

structed verdict; second, that the trial court erred in refusing to grant appellant's motion for judgment non obstante veredicto; third, that there is no evidence that authorized the submission to the jury of Special Issues Nos. 1, 2, 3 and 4 and there is no evidence of record to support the affirmative answer by the jury to said enumerated Special Issues; fourth, that it was error to submit Special Issue No. 1 over appellant's objection that there was insufficient evidence to warrant the submission thereof; number five, that the trial court erred in admitting over appellant's objection that portion of the deposition of the testimony of J. T. Cutler, who not having qualified as an expert witness was permitted to express a conclusion and an opinion about an ultimate fact to be determined by the jury or if qualified as an expert witness to testify about a matter that was not capable of being described in detail so as to give the jury an intelligible understanding and about which no expert opinion was necessary; sixth, that it was error to submit Special Issue No. 1 over the objection of appellant that said issue as phrased constituted a comment by the court upon the weight of the evidence, and assumed as a fact the very matter about which the inquiry should have been made, while the seventh point raises the question of the excessiveness of the judgment. Points 1 and 2 have been grouped by appellant and will be so treated by us.

The substance of appellee's testimony is that on June 22, 1938, he was the operator of a Humble Filling Station in Shepherd, Texas, and that on such date the appellant Roy Cornett drove a Chevrolet log truck and trailer into his filling station and that "he asked me to check the tires and see how much air was in them;" that when he went to check the air in one of the tires on the rear dual wheels he observed that the valve stem was bent down so that he could not get the air gauge on the stem without putting his hand thereon "to shove it back where I could angle the air gauge on there"; that "when I bent the stem up the rim blew off"; that as a result his hand was injured; that he had operated a garage for approximately three years; had former-

ly operated a gasoline agency and had used trucks in the distribution of products; had engaged in farming; had served as a county commissioner at which time he had supervision of dual wheel dump trucks; that he had been a machinist in government jobs and had driven a dual wheel truck for some six months; that in his business of operating a filling station he had occasion to air tires on trucks and automobiles; that he had known appellant some 12 or 14 years and had known John Kinney, (the owner of the truck which appellant was driving) who came with appellant into the filling station on the day of the accident, ever since he had lived in Shepherd, Texas; that the rim of the wheel which blew off is a circular device that fits around one side of the tire and holds it on the wheel; that the rim is separate from the wheel and fits into a groove thereon and is about one inch or an inch and a half wide; that he had never heard of a rim "popping off" of a tire and that as far as he could see there was nothing wrong with the tire or the rim on the truck; that you can't see the rim from the outside and one would have to get down and look close if one wanted to examine a rim and when they are put on dual wheels you couldn't tell whether there was anything wrong by looking at them; that he had never heard of any other filling station operator having any such experience of a rim flying loose. It was further shown that the appellant was engaged in operating this log truck for John Kinney; that he had at one time owned the truck he was driving but had sold it to Kinney sometime before appellee was injured but had continued to operate it after selling it to Kinney for a salary of $7.00 per day; that he kept said truck in his continuous possession, keeping it at his home at night; that the rim on the dual wheel had jumped off while the truck was traveling down the highway; that this was the only time he had had a rim to come off and had never known of a rim blowing off, but had heard of such things occurring; that it was unusual for rims to be jumping off. The evidence is sufficient to show that the identical rim which had blown off the wheel while appellant was operating the truck on the highway was the

rim that blew off and injured appellee; that appellant knew of the dangerous condition of the rim is shown from the following excerpt from his deposition as well as the testimony of the witness T. J. Cutler; specifically appellant testified as follows:

"Q. It coming off down the highway, you knew that was a dangerous situation? A. That is something I had never seen.

"Q. You knew it was dangerous for it to do it? A. Yes, sir.

"Q. And when you drove up here, you and Mr. Kinney, to Mr. Hardy's place this morning * * *. A. Yes, sir.

"Q. You still knew it was dangerous and just didn't think to tell him? A. Yes, sir.

"Q. You knew it was dangerous? A. Yes, sir.

\* \* \* \* \* \*

"Q. But I mean sitting right there still, and having done that while you were on a paved road, driving on pavement and expecting a man to put air in that tire, you wasn't surprised that it blew off, was you? A. No, I knew it was warped or something.

"Q. And you knew it was dangerous, didn't you, Roy? A. Yes, sir.

"Q. If you had thought you would have told this man? A. I sure would have."

Prior to the accident T. J. Cutler, who had worked on the truck wheels, informed the appellant that the rim was awfully rusty; that the tire was awfully dangerous; that the rim was worn out; that he, Cutler, knew it was a dangerous situation. It was also shown that appellant did not inform appellee of the defective condition of his wheel or rim. Appellant offered no testimony to contradict appellee's evidence. Appellant contends that the evidence wholly fails to show a duty owed by appellant to appellee and a failure on the part of appellant to exercise that degree of care required of him by law in performance of that duty. Appellant also contends that appellant was only a ministerial employee or servant of John Kinney and therefore was under no duty to the appellee to warn him of any defective condition of which he had knowledge that might cause injury, and cites as authority supporting this contention the case of Varas v. James Stewart & Co., Inc., 223 Mo.App. 385, 17 S.W.2d 651. That was a case in which the driver of the vehicle was directed by his master to deliver the truck to a repairman for repairs and because of a defect in the electrical wiring of the truck the repairman was injured. The substance of the holding of the court was to the effect that the driver of the truck was a mere ministerial servant commissioned as a driver of the truck to deliver it to the plaintiff and to deliver the instructions of his master to repair the brakes; he was not a foreman or manager and had no general powers or authority; that his failure to disclose to the plaintiff the defective condition of the truck amounted to "nonfeasance;" that it was neither "malfeasance" nor "misfeasance" and concluded that if the servant negligently performs what he undertakes to perform for his master he is guilty of misfeasance, whether the negligence consists of an act or commission or mere omission, whether the negligence is a positive wrong or a negative wrong; but if in performing the work the master has commissioned him to perform, he merely omits that which is not within his duties as a servant, this amounts to mere "nonfeasance" for which he is not liable and no duty to notify plaintiff of such defective condition was imposed upon him in performing the ministerial act of delivering the truck with his master's message to the plaintiff. We do not understand from our reading of the authorities that this rule has been wholly adopted by the courts of Texas. However, if this were the rule in Texas, we feel that the facts here distinguish this case so as to prevent the rule from applying. In the case at bar the appellant had the constant control and operation of the truck in question; it was being used for the purpose of hauling saw logs. It is common knowledge that in order to operate a truck it is necessary for the operator to see that there is always a sufficient amount of air in the tires. It thus appears that appellant was doing, at the time, one of the things necessary to be done in the operation of the truck which had been entrusted to his control, when he, knowing the dangerous con-

dition of the rim and wheel on his truck, requested appellee to check and air his tires without warning him of the known dangerous condition. This presents an entirely different factual situation than was before the court in the Varas case, and brings this case within the rule announced in Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; Southern Kansas R. Co. v. Crump, 32 Tex.Civ.App. 222, 74 S.W. 335; Kenney v. Lane, 9 Tex.Civ. App. 150, 36 S.W. 1063; see also, Rogoff v. Southern New England Contractors Supply Co., 129 Conn. 687, 31 A.2d 29; Boak v. Kuder, 336 Pa. 260, 9 A.2d 415; Blum v. Shrock, 104 Ind.App. 247, 10 N.E.2d 752; Galveston-Houston Electric R. Co. v. Renile, 113 Tex. 456, 258 S.W. 803; Texas, Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302; Gulf Production Co. v. Quisenberry, 128 Tex. 347, 97 S.W.2d 166; General Accident, Fire & Life Assurance Corp. v. Goodyear Tire & Rubber Co., 2 Cir., 132 F.2d 122.

■ 61 Corpus Juris Secundum, Motor Vehicles, § 741, at page 887, announces the general rule as follows: "Unless precluded by contributory negligence or assumption of risk, a repairman may, on adequate evidence, recover from a customer for personal injuries sustained while repairing the customer's motor vehicle and resulting from the negligence of the customer as where the customer knew of the defect causing the injury and failed to give warning thereof."

■ We agree with appellee that under these cases it is the law of this State, that, when a servant or agent once enters upon the performance of his duties for his master or principal he owes a duty to the general public to avoid negligence, whether active or passive. Passive negligence after the duties are begun is in law "misfeasance". It is only when there is a complete failure to enter upon the duties of the master or principal that there is a "nonfeasance" for which the servant or agent is not liable to third persons. For a clear analysis of this principle see Kenney v. Lane, supra.

■ Appellant contends that it can not in reason be said that a person of ordinary intelligence and prudence could anticipate that a rim on a dual wheel would fly loose while the vehicle was standing still in a filling station and during a time when air was being placed in a tire. This contention would be very forceful but for the evidence of appellant to the effect that he knew of the dangerous condition of the rim and that he was not surprised that the tire blew off. To our minds, this evidence by the appellant is a complete answer to his argument here. For the foregoing reasons, we overrule appellant's Points 1 and 2.

■ The testimony given by the witness T. J. Cutler by deposition, concerning the condition of the rim on appellant's truck wheel, against which appellant urges his Point 5, was, in substance, that he told Cornett that it was dangerous; that it should be changed; that it was worn out and that it was too loose; that at the time one of the rims was so badly worn that he replaced it with another rim and that another rim was also worn and rusted; that he would have thrown it away if he could have replaced it with another rim, but failed to do so for the reason that he did not have a rim with which to replace it. The witness Cutler had testified that he had had two years' experience in the filling station business, during which time he had changed many tires on cars and trucks; and that he had done some work on the wheels of the truck appellant was driving a short time before the accident in question. We overrule appellant's contention. We think this evidence was admissible as going to show that appellant had actual knowledge of the condition of the rim in question, and, further, we feel that it was shown that the witness Cutler had sufficient experience with mounting and dismounting tires to be in a position to know whether a rim was too loose or in a worn out condition. Certainly his testimony was the expression of an opinion, but such opinion testimony has been held to be admissible in many cases. See: Aetna Life Ins. Co. v. Robinson, Tex.Civ.App., 262 S.W. 118, affirmed, Tex. Com.App., 276 S.W. 900; Missouri Pac. Ry.

Co. v. Jarrard, 65 Tex. 560; Exporters' & Traders' Compress & Warehouse Co. v. Shaw, Tex.Civ.App., 20 S.W.2d 248.

 Special Issue No. 1, the form of which is a basis for Point No. 6 is as follows:

"Do you find from a preponderance of the evidence that the rim holding the tire on the dual wheel that blew off when Mr. J. E. Hardy was undertaking to air the same had become in such defective condition that it would blow off on its own accord?" The objection was that said issue as phrased constituted a comment by the court upon the weight of the evidence and assumed as a fact the very matter about which the inquiry should have been made. We see no merit in this contention. It was undisputed that the rim which blew off was in a defective and dangerous condition. Appellant himself so testified. The objection itself does not point out what fact was assumed to be true, and further contends that if the evidence was undisputed as to the rim being defective, then appellee had the burden of proving, by a preponderance of the evidence, that the rim was worn to the extent that it would unexpectedly blow off. This was the ultimate fact issue to be determined by the jury and as framed, the issue fairly presented this question to be determined by the jury. Finally, and disposing of appellant's seventh and last point we are unwilling to say that the amount of the verdict is so excessive that it evidences bias, prejudice and passion, or some other improper motive upon the part of the jury. It was shown that the appellee was a man of 52 years of age, lost the first joint of his thumb and all the fingers except the little finger (which was badly mashed ). Dr. Hale, who testified for appellee, rated the loss as 100% disability as far as his actual hand itself is concerned. His hand cannot be used for picking up anything. The amputated places hurt continuously and the nerves are exposed, causing the places to stay sensitive and sore. Appellee says some of the exposed places are just "like a risen" all the time. If he hits these places on anything it makes him sick. He cannot stand the least touch on them. Anything he does that hits those places is painful. At times it feels as if pins are sticking in the places and they bother him all the time and it never does quit. Appellee has pain in the arm and shoulder from those nerves being exposed. He has had headaches and back pains. This Dr. Hale testified resulted from psychic trauma and that trauma of that type from such an injury is permanent; and that the pain in the arm and shoulder was caused by a disturbance of the nerve trunk itself. Appellee says that the disfigured hand worried him, causing him embarrassment so he does not go anywhere but stays home almost all the time; that he is not able to perform all of his usual duties at his filling station; that he is compelled to employ additional help in order to operate his business; that of the several jobs he held before his injury he could not now do any of them, as they required the use of both hands. We realize that it is hard to place a dollar and cents value on pain and suffering, therefore when a jury undertakes to evaluate such damages, their decision should not be taken lightly. Here the appellee has undoubtedly suffered substantial damages other than his mental pain and suffering, and, as we have said before, when we take into consideration the present purchasing power of the dollar as compared with its purchasing power of only a few years ago, we are unwilling to disturb the amount of damages awarded appellee by a jury of his peers. In the case of Bonner v. Bean in 1891, reported in 80 Tex. 152, 15 S.W. 798, an award of $5,000 was allowed to stand where only one finger was amputated. A similar case is San Antonio & A. P. Ry. Co. v. Mason, Tex.Civ.App., 289 S.W. 1027. See, also, San Antonio & A. P. Ry. Co. v. Beauchamp, 54 Tex.Civ. App. 123, 116 S.W. 1163, 1166, where a court sustained a verdict for $12,000 for a loss of two fingers. This was in 1909. Many other cases of similar import could be cited, however we feel it unnecessary to do so. It follows that we are of the opinion that no error has been shown, requiring a disturbance of the trial court's judgment. It is therefore affirmed.