**WESTERN ROCK COMPANY et al.,**
**Appellants,**

v.

**N. W. DAVIS et al., Appellees.**

No. 16951.

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 20, 1968.

Rehearing Denied Oct. 18, 1968.

**556**

Brown, Day & Crowley, and M. Hendricks Brown, Fort Worth, for appellants.

Fillmore & Fillmore, and H. Dustin Fillmore, Wichita Falls, for appellees.

## OPINION

LANGDON, Justice.

Exception 9a of Article 1995, Vernon's Ann.Tex.Civ.St., was invoked by a group of property owners, plaintiffs (appellees herein) who sued Western Rock Company, a corporation, G. L. Stroud, L. C. Fuller, and other parties, in Jack County, Texas, seeking damages sustained to their respective homes and business properties because of alleged negligent blasting operations conducted in a rock quarry near Jacksboro, Texas, during the period August, 1965, through April, 1966.

G. L. Stroud, L. C. Fuller and Western Rock Company have appealed from the action of the Court in overruling separate pleas of privilege (timely controverted) filed by each to be sued in Dallas County, Texas.

It is contended that the court erred in overruling the pleas of G. L. Stroud, President of Western Rock Company, and of L. C. Fuller who was merely a director of such corporation and took no part in the operation of the quarry or the blasting complained of and thus was not responsible for torts or negligence of said corporation or its president; that there was no testimony or insufficient testimony showing blasting operations of Western Rock Company resulted in damages to plaintiff's buildings or to connect such damage with the alleged blasting or to show negligence on the part of any of the appellants which was a proximate cause of such claimed damage and that each plea of privilege should therefore have been sustained rather than overruled.

We affirm.

It is argued that since Fuller was merely a director of Western Rock Company, a part of the time during the period August, 1965, to May of 1966, and nothing more, he cannot be held responsible for the torts of the corporation.

Many of the authorities cited and relied upon by appellants are also relied upon by the appellees. Thus, the chief dispute is whether or not the record in this case reveals that appellees' cause of action against appellant Fuller is based upon more than the fact that he was a director of Western Rock Company.

The evidence deemed pertinent is summarized as follows:

At all times relevant to this cause it is undisputed that Fuller, Stroud and the latter's wife were on the Board of Directors of Western Rock Company, and that the latter company engaged in blasting activities commencing in August, 1965, and continuing through April, 1966. Stroud, his wife, and Mrs. Fuller (wife of appellant Fuller) were the officers of Western Rock. Fifty percent of the latter company was owned by Stroud and wife. Fuller testified he was owner of the other half interest and again testified it was owned by Machinery Investment Corporation

which is wholly owned by him and his immediate family.

The physical assets used by Western Rock Company in the conduct of its business and operations were leased from Fuller and Fuller's family corporation. Under this arrangement Fuller was in a position to profit if Western Rock Company profited. He was also in a position to withdraw all assets from Western Rock in the event Western Rock became insolvent.

Fuller described his relationship with Western Rock Company, during the period of time in question, as follows: "Well, you might say I was their father-confessor. Everything they did, every damn piece of equipment they had, every bank loan they had and everything else, I was the man behind it. So I done it all from that standpoint. I furnished them the money."

Fuller attended the meetings of the Board of Directors of Western Rock and visited the job site in Jacksboro, Texas, on at least three occasions.

During the Jacksboro job, Fuller testified that he was in touch with Stroud, who was personally supervising the Jacksboro operation, "At least five times a week, every day in the week."

Fuller was familiar with the operation and knew that blasting activities were being carried on during this period of time although at one point he refused to admit such knowledge.

During the early fall of 1965, during the time Fuller and Stroud were in daily contact, Stroud began to learn of complaints of damages being sustained by the people in Jacksboro by reason of the blasting activity being carried on, under his supervision, by Western Rock Company.

After complaints had been referred to Stroud, he set about making tests to measure the disturbance of the various blasts. During this period Western Rock Company began to run into financial difficulties.

A suit for damages and injunctive relief was filed against Western Rock on November 12, 1965. A letter from Mr. Hendricks Brown dated November 27, 1965, was received by Stroud advising that there was a serious question as to whether insurance coverage would be available to protect the company from a recovery of damages.

Although from the record such delay is inconceivable, it was not before January of 1966, according to Stroud, that he informed Fuller that Western Rock Company, whose financial condition had been steadily deteriorating, had received complaints— that tests had been performed to determine the violence of the blast—that a petition seeking damages and injunctive relief against the activities of Western Rock had been filed and served on Western Rock— that the attorney representing the insurance company had informed Western Rock that in all probability there was no insurance coverage available.

After learning in January of 1966, of the impending lawsuit for damages and injunctive relief and the fact that the company very likely had no insurance protection, it was decided by Fuller and Stroud to continue with such blasting activities— which they did. Stroud further testified that if Fuller had told him to cease all blasting activities, he would have complied. Fuller did not tell Stroud to cease blasting. He and Stroud knowingly continued to engage in blasting activities for another four months.

On May 27, 1966, the claim filed against Western Rock Company was submitted to a jury. L. C. Fuller, on or about May 27, 1966, personally stepped in and assumed full control of the Western Rock Company operation. He personally took over the assets of the corporation and continued to operate in the name of Western Rock Company. When the trial was concluded and the verdict was rendered against Western Rock Company, all assets of Western Rock Company were assigned to and repossessed by Fuller's family corporation. Stroud, who had been personally super-

vising and directing the operations of Western Rock, took over as superintendent of the operation for Fuller when the latter assumed personal control of the operation. Stroud, although "unemployed" at the time of the Plea of Privilege hearing, was last employed by another of the Fuller family corporations.

Fuller's personal attorney was sent to Jacksboro sometime before the trial of the lawsuit against Western Rock. Either Fuller, personally, or his personal attorney gave instructions to cease blasting.

It appears obvious from the record that appellees' cause of action against Fuller is based upon ample proof that he was the dominating force behind Western Rock, a shell corporation, which had no assets and was in financial difficulty. That the corporation served as a device through which Fuller and Stroud could carry on destructive blasting activities at the expense of the property owners of Jacksboro, and at the same time be personally insulated from legal and financial responsibility against wrongs which were knowingly permitted, directed and controlled by them through the corporation device.

■ The liability of corporate officers and directors of corporations is not because they occupy such positions, "but springs out of their participation in the wrong." Sutton v. Reagan & Gee, 405 S.W.2d 828 (San Antonio Tex.Civ.App., 1966, ref., n.r.e.).

■ "It is now well settled, as a general doctrine, that, when this fiction is urged to an intent not within its reason and purpose, it should be disregarded and the corporation considered as an aggregation of persons, both in equity and at law." 18 C.J.S., Corporations § 6, page 376. In the footnotes at page 376, the rule is otherwise stated: "The existence of the corporation as a distinct legal entity is a legal fiction, and where to recognize the corporation as a distinct legal entity will justify wrong, protect fraud, or defend crime, the law will disregard this fiction and view the corporation as an association of persons." See authorities cited thereunder.

In Houston-American Life Insurance Co. v. Tate, 358 S.W.2d 645 (Waco Tex.Civ. App., 1962, no writ hist.), the Court adopted the test set out in Pacific American Gasoline Co. of Texas v. Miller, 76 S.W.2d 833 (Amarillo Tex.Civ.App., 1934, writ refused): " 'Upon ascertainment of the facts, the courts will disregard the fiction of corporate entity where the fiction (1) is used as a means of perpetrating fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation; * * * (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.' "

To the same effect see Continental Supply Co. v. Forrest E. Gilmore Co. of Texas, 55 S.W.2d 622 (Amarillo Civ.App., 1932, writ dism.).

See also 14 Tex.Jur.2d 474, § 373; 19 C.J.S. 272, § 845, and authorities therein cited.

In McDonald Texas Civil Practice, Vol. 1, Venue, § 4.17.2, Art. 1995(9a), Negligence, it is stated:

" 'A suit based upon negligence per se, negligence at common law or any form of negligence, active or passive, may be brought in the county where the act or omission of negligence occurred or in the county where the defendant has his domicile. * * *'

" * * *

"The statute specifies the facts which plaintiff must establish by the preponderance of the evidence to sustain venue under the exception. Both plaintiff and defendant may offer evidence on the venue hearing, and the trial court must make his deter-

mination upon the weight of all the evidence. The statutory venue facts are:

" '1. That an act or omission of negligence occurred in the county where suit was filed.' * * *

" '2. That such act or omission was that of the defendant, in person, or that of his servant, agent or representative acting within the scope of his employment.' * * * Similarly, an employer may be charged with negligence of an independent contractor under circumstances which would make the employer liable for the latter's wrongdoing.

" '3. That such negligence was a proximate cause of plaintiff's injuries.'

"Plaintiff must establish facts under which the law will recognize in him a claim for damages for the negligence alleged. He must prove that he sustained some injury. But it is the fact of the injury to plaintiff's person or property, not the amount of damages, which is determinative."

As to the element of injury or damage to the plaintiffs' person or property it was said in Spoon v. Penix, 422 S.W.2d 167, (Tex.Sup., 1967), that: "When the plaintiff Penix conclusively established that his automobile had been struck as a proximate result of defendant's negligence, he established his right to maintain the action in Jones County over the plea of privilege of defendant. *The extent of the injury or damage suffered by the plaintiff constitutes no part of a venue fact. The uncontroverted evidence showed that the defendant had violated a legal right of the plaintiff and that is all the statute requires.* Hawkins v. Schroeter, 212 S.W.2d 843 (Tex.Civ. App.1948, no writ)." (Emphasis ours.)

■ In our opinion all of the venue facts were supported by ample evidence.

■ We are of the opinion and hold that the evidence was adequate to support the judgment of the court that L. C. Fuller and G. L. Stroud were legally responsible, individually and jointly, for negligent conduct which was a proximate cause of damages sustained in Jack County and upon which this suit is based. Further that such evidence supported a finding of a causal relationship between the blasting operations carried on by Western Rock and the damages sustained by the appellees.

We see no necessity in relating in detail the testimony and other evidence relating to the blasting operations and the resulting damages which ensued therefrom. Suffice it to say that there was conflicting testimony reflecting the opposing positions of the parties and that there is in the record ample evidence to support the judgment of the court. All points of error are overruled and the judgment of the trial court is affirmed.