**Russell LEITCH, Hal Crews, and ProCom Marketing Services, Inc., Appellants,**

v.

**Grady HORNSBY, Appellee.**

No. 04–93–00335–CV.

Court of Appeals of Texas, San Antonio.

Sept. 28, 1994.

Charles M. Jefferson, Smith, Barshop, Stoffer & Millsap, San Antonio, for appellants.

Kathleen A. Hurren, Clark, Thomas, Winters & Newton, Charles A. Nicholson, Scott Roberts, Raul A. Rios, Law Offices of Pat Maloney, P.C., San Antonio, for appellee.

Before BUTTS, PEEPLES and HARDBERGER, JJ.

HARDBERGER, Justice.

This is a non-subscriber worker's compensation case in which Grady Hornsby injured his back unloading a reel of cable wire weighing approximately 65 pounds from his truck. The jury found the corporate employer and two individuals negligent and the trial court entered judgment for Hornsby. Appellants raise 14 legal and factual sufficiency points of error. For the reasons stated below, we affirm the trial court judgment.

### Background

Hornsby injured his back while working as a technical manager for a television cable installation company. His employer did not provide him a weight-lifting belt, a dolly, or any other type of equipment to assist him in lifting a reel of cable wire out of his pickup. Hornsby did not ask for any help to unload the cable reel. Hornsby severely injured his back and has since undergone two back operations. He has not worked since the date of the accident. No worker's compensation coverage existed for the injury. Hornsby sued several entities and individuals on several grounds, including that they were his "employers" and through their negligence had caused his injury. The jury agreed. The trial court entered judgment based on a jury's finding of negligence in the amount of $594,000, plus pre-judgment interest of $103,795.40. The employer corporation, and

Crews and Leitch in their individual capacities, were found jointly and severally liable and appeal this judgment.

## Legal Insufficiency

 Appellants raise seven "no evidence" points of error asserting a complete lack of evidence on each issue. *See Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275 (Tex.App.–Amarillo 1988, writ denied). In reviewing "no evidence" points, we consider only the evidence and inferences that tend to support the finding, and disregard all evidence and inferences to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989). Thus, if the record contains more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987).

## Factual Insufficiency

Likewise, appellants raise the same seven issues as "insufficient evidence" points of error. "Factual sufficiency points of error concede conflicting evidence on an issue, yet maintain that the evidence against the jury's finding is so great as to make the finding erroneous." *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d at 275. Before detailing the evidence, it is important to remember that this court is not jury number two. Whether this court, if it were the original factfinder, would have found for one side or the other is immaterial. A jury in this state has great power. Jurors are "the sole judges of the credibility of the witnesses and the weight to be given to their testimony." Tex.R.Civ.P. 226a, approved instruction III. Their decision is not to be tampered with lightly, whether it favors the plaintiff or the defendant. The jury has, and should have, the final word on facts.

 The supreme court has stated the standard by which we review a factual sufficiency point: we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). "[I]n considering great weight points complaining of a jury's failure to find a fact, courts of appeals should be mindful that a jury was not convinced by a preponderance of evidence." *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988). Reversal is warranted only if a detailing of the evidence shows that the *great* weight of the evidence supports a different answer. *Id.*

 This court may not, and will not, substitute its judgment for that of the jury if the challenged finding is supported by some evidence of probative value and is not against the great weight and preponderance of the evidence. *See Alford, Meroney & Co. v. Rowe*, 619 S.W.2d 210, 213 (Tex.Civ.App.–Amarillo 1981, writ ref'd n.r.e.).

 On those occasions when an appellate court reverses a case for factual insufficiency, *Pool v. Ford Motor Company* requires that we "detail the evidence relevant to the issue in consideration, ... clearly state why the jury's finding is factually insufficient or ... against the great weight and preponderance of the evidence, [and] state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). Although *Pool* does not extend this level of analysis to *affirmances* on these grounds, we will mention evidence we consider sufficient to support the jury's verdict.

## Simple Tool Rule

 In points one through four, appellants claim that the jury's finding of negligence is legally and factually insufficient because (a) they were not responsible for furnishing Hornsby, an experienced employee, with simple tools, and (b) it is not the custom in the industry to furnish cable installers with lift belts. The "simple tool rule" relieves an employer of the duty to inspect a tool if that tool is committed to the exclusive control and care of the employee, and is of such a charac-

ter that the employee who handles it should be fully acquainted with its condition. *City of Houston v. Howard*, 786 S.W.2d 391, 395 (Tex.App.–Houston [14th Dist.] 1990, writ denied) (citing *Gulf, C. & S.F.R. Co. v. Larkin*, 98 Tex. 225, 82 S.W. 1026, 1028 (1904)).

We agree with the simple tool rule, but it is not applicable in this case. It is a rule of inspection, not a rule on whether the employer has a duty to furnish tools such as lift belts or dollies to the employee as is the case here. We agree with appellee that the case of *Harrison v. Oliver*, 545 S.W.2d 229 (Tex.Civ.App.–Houston [1st Dist.] 1976, writ dism'd), is more on point. That case cites the rule in Texas that an employer has a "nondelegable and continuous" duty to an employee to provide adequate help in performance of his work assignment. The employer has a similar duty to provide the employee with safe instrumentalities and tools, and to provide a safe place to work. *Id.* at 230 (citing *Western Union Telegraph Co. v. Coker*, 146 Tex. 190, 204 S.W.2d 977 (1947)); *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 135–36, 70 S.W.2d 397, 401 (1934); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 926 (Tex.App.–Houston [1st Dist.] 1988, no writ).

Nor can we agree that "industry standard" controls this case. Industry standards are evidentiary, but not dispositive. *Milner v. Huntsville Memorial Hospital*, 398 S.W.2d 647, 652 (Tex.Civ.App.–Houston 1966, no writ); *Brown v. Lundell*, 334 S.W.2d 616, 619 (Tex.Civ.App.–Amarillo 1960), *aff'd*, 162 Tex. 84, 344 S.W.2d 863 (1961); *Cameron Compress Co. v. Whitington*, 280 S.W. 527, 529 (Comm'n App.1926, jmt. adopted). Some industry customs may be the result of careful thought and discussion while others arise from the kind of inadvertence, carelessness, indifference, cost-cutting and lack of safety measures that may be associated with negligence. An entire industry, by adopting careless methods to save time, effort or money, cannot by its careless conduct set its own uncontrolled standard for all members. Indeed, were the only test for negligence what an industry had done before, no industry would have any incentive to make progress in the direction of safety.

There was evidence Hornsby had repeatedly requested Leitch to provide the installation crew with lifting belts and dollies and was turned down. While this testimony was contradicted by the defendant, the jury was entitled to believe it. It is the jury's job to resolve conflicting testimony. They did so. They concluded that the employer was negligent for failing to furnish the equipment. There is some evidence to support that finding. Points one through four are overruled.

### Safe Alternative

In points five and six, appellants argue that they could not be found negligent because Hornsby had a safe alternate method of lifting the cable reel—he could have asked another employee to help him lift it from his truck. The accident occurred in the motel parking lot where the cable crew stayed while working on the cable installation job. Another employee, Whidden, was inside the motel room with the door open. It is the appellants' position that Hornsby should have gotten Whidden to help him unload the cable reels. Whidden, however, was not a cable installer. He was sales manager for the job. He was in his motel room doing his paper work when he heard Hornsby's cry of pain. An employer has a non-delegable duty to provide rules and regulations for the safety of its employees and to warn them, under certain conditions, of the hazards of their employment. *Ghazali v. Southland Corp.*, 669 S.W.2d 770, 774 (Tex.App.–San Antonio 1984, no writ). Whidden testified that neither Leitch nor Crews ever held safety meetings with their employees regarding proper lifting techniques. There is no evidence that Whidden was instructed, as a part of his duties, to assist cable installers in lifting heavy objects. Or that either Hornsby or the employer envisioned Whidden as an employee with unloading duties. The employer has a non-delegable duty to provide a safe place to work and adequate help in a work assignment. *See Heritage Manor, Inc. v. Tidball*, 724 S.W.2d 952, 955 (Tex.App.–San Antonio 1987, no writ). Neither happened in this case.

The safe alternative argument fails for another reason. The jury found that Hornsby was an employee of Pro Com Marketing Services, Inc. As Pro Com was a non-subscriber to the worker's compensation insurance, Pro Com does not have the common law defenses of contributory negligence or assumption of the risk. Points five and six are overruled.

### Proximate Cause

 Plaintiff must plead and prove that the defendant's negligence is the proximate cause of his injury. Proximate cause must meet a two-pronged test: (1) cause in fact; and (2) foreseeability. *See Farley v. M M Cattle Company,* 529 S.W.2d 751, 755 (Tex. 1975). In points seven through ten, appellants argue there was no evidence or alternatively insufficient evidence that Hornsby's lifting injury was foreseeable or that appellants' negligence, if any, was the cause in fact of Hornsby's injury, thereby precluding a finding of negligence.

 The foreseeability of back injuries in connection with the regular lifting of heavy objects must be judged by a reasonable person standard. *See Exxon Corp. v. Roberts,* 724 S.W.2d 863, 867 (Tex.App.–Texarkana 1986, writ ref'd n.r.e.). Testimony from the treating physician, based upon a medical history taken from Hornsby near the time of the injury, indicates Hornsby's medical symptoms were related to a lifting injury. Hornsby testified that he was in the act of lifting the cable reel when the injury occurred. There was also considerable testimony that Hornsby and Whidden had requested of Leitch and Crews that lifting belts be provided in order to ease the strain of lifting heavy equipment. Whidden testified that use of lifting belts would have eliminated this injury. There was partially conflicting testimony to the degree that Dr. Geibel testified that safety belts do not necessarily prevent lifting injuries. To the degree there was a conflict, the jury resolved it. The jury was entitled to conclude that this injury was foreseeable and caused by the negligent acts or omissions of appellants under the circumstances presented at trial. Points seven through ten are overruled.

### Corporate Officer Liability

In points eleven and twelve the individual appellants argue that their negligence, if any, amounted to mere nonfeasance for which corporate officers could not be held personally liable. Crews and Leitch were sued in their individual capacities, not in their official capacities. Plaintiff alleged in his fifth amended original petition:

The injuries of September 17, 1990 were proximately caused by the negligent conduct of these Defendants, Russell Leitch, Hal Crews, Prom [sic] Com Marketing Services, Inc., ... in one or more of the following respects, to-wit:

(1) Failing to provide Plaintiff with a safe work place, equipment, rules and co-employees;

(2) Failing to inspect, oversee and otherwise exercise some control over the facilities and operation being worked on;

(3) Failing to provide an inspector-overseer who would inspect, oversee and otherwise exercise some control over the facilities and operation being worked on;

(4) Failing to provide Plaintiff with the proper equipment to lift heavy objects and other gear related with the business;

(5) Failing to provide Plaintiff with a protective lifting belt for employees lifting heavy objects to protect a persons [sic] back from such excessive restraints;

(6) Failing to warn the Plaintiff of the dangerous conditions and/or activities involved in performing his work;

(7) Failing to provide the Plaintiff with competent and well trained co-employees to perform his work;

(8) Failing to provide the Plaintiff with safety instructions, guidelines, and procedures to properly and safely perform his work; and

(9) Failing to provide any safety training pertaining to any facet of the job.

Each of the above and foregoing was a proximate cause of the injuries suffered by the Plaintiff.

In Question No. 2, the jury was asked: "Did the negligence, if any, of the persons named below proximately cause the injuries in question?" The jury answered "Yes" as to Russell Leitch, Hal Crews, and Pro Com Marketing Services, Inc. and "No" as to Cable Television Employment Services, Inc. and Grady Hornsby.

■ Therefore, the jury found that both Leitch and Crews were guilty of negligence that proximately caused the injury. As a general rule, a corporate officer or agent may be held personally liable for corporate wrongdoing in which he is an active participant or has knowledge of the tortious conduct, either actual or constructive. *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984); *K & G Tool & Serv. Co. v. G & G Fishing Tool Serv.,* 158 Tex. 594, 314 S.W.2d 782, 793 (1958); *Portlock v. Perry,* 852 S.W.2d 578, 582 (Tex.App.–Dallas 1993, writ denied). Imposition of personal liability on a corporate agent presupposes that the agent has participated in the wrongdoing, or that he had knowledge of and consented to the wrongdoing. *Western Rock Co. v. Davis,* 432 S.W.2d 555, 558 (Tex.Ct. App.—Fort Worth 1968, no writ); *Diversion Lake Club v. Self,* 71 S.W.2d 553, 555 (Tex. Civ.App.–San Antonio 1934, no writ).

■ To impose personal liability there must be a finding of negligence and evidence to support that finding. *See J. Weingarten, Inc. v. Moore,* 449 S.W.2d 452, 453 (Tex. 1970). In *J. Weingarten,* there was no finding or evidence that the particular agent involved was negligent. In this case, there was both evidence and a specific jury finding that Leitch and Crews were negligent and that their negligence proximately caused the injuries in question. Thus, the *J. Weingarten* standards were met in the instant case.

■ It has long been the law in tort law that an employee or agent is responsible for his own acts and may be found negligent for those acts as is the corporation under the theory of respondeat superior. This is not always the case in contract law because there the nature of the duty is defined by the contract itself. An employee, who is not party to the contract, cannot be held liable for a breach of that contract, or for a deceptive act growing out of that contract, unless he violated the DTPA or committed a separate tort himself.

For instance, in the Texas Deceptive Trade Practices Act case of *Karl and Kelly Company, Inc. v. McLerran,* 646 S.W.2d 174, 175 (Tex.1983), the dispute grew out of a contract with a corporation to which the individual agents were not parties. Therefore, a finding of alter ego was necessary for liability to attach to the agents individually. *Id.* In another DTPA case where the relationship between the parties arises out of contract, the court held that an agent is not liable for the acts of the corporation unless there is a finding of individual wrongdoing supported by pleadings and evidence. *See Light v. Wilson,* 663 S.W.2d 813 (Tex.1983) (agents not personally liable on DTPA claim where no finding of individual liability and alter ego theory neither pled nor proved).

■ Leitch and Crews were held individually liable because they themselves committed negligence that proximately resulted in an injury to Hornsby. Thus, Leitch and Crews are liable regardless of whether alter ego was found. *See id.* at 815 (J. Spears, concurring); *Leyendecker & Associates, Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984); *Guilbeau v. Anderson,* 841 S.W.2d 517, 519 (Tex.App.–Houston [14th Dist.] 1992, no writ); *Barclay v. Johnson,* 686 S.W.2d 334, 337 (Tex.App.–Houston [1st Dist.] 1985, no writ).

■ Leitch, Crews, and the corporation each had a duty under tort law not to injure—actively or passively. Their respective roles vis-a-vis Hornsby invoke a negative duty somewhat quaintly labelled "misfeasance."

> Misfeasance may involve also, to some extent, the idea of not doing; as where the agent, while not engaged in the performance of his undertaking, does not do something which it was his duty to do under the circumstances,—does not take that precaution, does not exercise that care, which a due regard for the rights of others requires.

*Kenney v. Lane,* 9 Tex.Civ.App. 150, 36 S.W. 1063, 1063 (1894, no writ). To put it in more modern language, a person can be negligent for not doing something just as he can be negligent for doing something.

> [H]e cannot, by ... leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is not nonfeasance, or doing nothing; but it is misfeasance, doing improperly.

*Id.* 36 S.W. at 1064.

▆▆▆▆ The law of Texas has always been that when a servant or agent once enters upon the performance of his duties for his master or principal, he owes a duty to avoid negligence, "whether *active or passive.* Passive negligence after the duties are begun is in law 'misfeasance.'" *Cornett v. Hardy,* 241 S.W.2d 186, 190 (Tex.Civ.App.–Beaumont 1951, no writ) (emphasis added).

▆▆▆▆ There are certainly corporate acts that do not transfer liability to the corporate officer and agent. But the fact that a person is an officer or agent does not provide a shield from personal liability. They may be found negligent in their own acts. *See Leyendecker,* 683 S.W.2d at 375; *Mayflower Investment Co. v. Stephens,* 345 S.W.2d 786, 795 (Tex.Civ.App.–Dallas 1960, writ ref'd n.r.e.). They were in this case. If there is individual negligence, as the jury found in this case, it is not necessary to pierce the corporate veil. Only where the individual's negligence is merely derivative of the corporation's negligence is it necessary to pierce the corporate veil. *Barclay v. Johnson,* 686 S.W.2d 334, 337–38 (Tex.App.–Houston [1st Dist.] 1985, no writ); *Duval County Ranch Co. v. Wooldridge,* 674 S.W.2d 332, 337 (Tex. App.–Austin 1984, no writ).

▆▆▆ Such is not the case here. Whidden and Hornsby testified that they had each requested safety and lifting equipment from both Leitch and Crews and these requests had been denied. The jury found this to be negligence. There is evidence to support this view. Points eleven and twelve are overruled.

Lastly, appellants argue that Leitch and Crews were not negligent because they delegated the responsibility for cable installation to Pro Com's technical manager, Hornsby. This issue fails because an employer has a "nondelegable and continuous" duty to an employee to provide adequate help in performance of his work assignment. The employer has a similar duty to provide the employee with safe instrumentalities and tools, and to provide a safe place to work. *Harrison v. Oliver,* 545 S.W.2d 229, 230 (Tex.Civ.App.–Houston [1st Dist.] 1976, writ dism'd). An employer has a non-delegable duty to provide rules and regulations for the safety of its employees and to warn them, under certain conditions, of the hazards of their employment. *Ghazali v. Southland Corp.,* 669 S.W.2d 770, 774 (Tex.App.–San Antonio 1984, no writ.)

Appellants' reliance on *Portlock v. Perry,* 852 S.W.2d 578 (Tex.App.–Dallas 1993, writ denied), is misplaced. That case does not involve an officer's non-delegable duties to the company's employees. The *Portlock* case found that Perry, a financial officer, did not participate in the day to day operations of running a clinic and had not undertaken any duty to institute policies and procedures and quality control of the clinic. Those duties were delegated to the medical employees. Perry's omission in failing to inform himself of corporate policies and procedures did not constitute direct participation in the clinic personnel's negligence because he had no affirmative duty to act. *Portlock v. Perry,* 852 S.W.2d at 582. There is evidence that Leitch and Crews, each president and sole shareholder of their respective corporations, both took an active role in managing the daily operations of the business which employed Hornsby. On several occasions the issue of safety equipment was presented to Leitch and Crews and they decided not to furnish to their installation crews safety equipment recommended by their technical manager. This is direct participation by corporate agents of a nature which the jury could and did find proximately caused Hornsby's injury. Points thirteen and fourteen are overruled.

The judgment of the trial court is affirmed.

PEEPLES, Justice, concurring and dissenting in part.

I agree with most of the majority opinion, but dissent from the holding that the individual defendants, Leitch and Crews, are personally liable for the corporation's failure to furnish Hornsby a lifting belt. Corporate employees can now be held individually liable, apparently without common-law defenses, for the tort of failing to furnish equipment, even though the duty to furnish equipment belongs to the employer, not the individual. With this holding, failure to prove alter ego means nothing, because corporate employees are individually subject to liability for the decisions they make, even though the individuals are the plaintiff's co-employees, not his employer. The majority has actually held that the individuals who work for a company owe as individuals the same duties the company owes, even if their actions would not be tortious if done individually. This holding is unsupported by precedent, analysis of the worker's compensation statute, or by policy reasoning of any kind.

The jury failed to find that the corporation, Pro Com, was the alter ego of Leitch and Crews. They therefore are not liable for the corporation's torts on an alter ego theory. But the majority concludes that they are still individually liable, on grounds that I believe do not apply to this case. The point of difference between us is that I do not think Leitch and Crews owed Hornsby a duty *as individuals* to furnish equipment. They did not contract with Hornsby; he worked for the company, not for them. They cannot be negligent individually for failure to furnish equipment because they owed no individual duty to furnish equipment.

It is true that an employee can be liable for his own torts, and for his own active or passive negligence, even though he was on the job for an employer at the time. *But this rule applies only when the employee committed an independent tort—that is, owed an individual duty to the injured person apart from the employer's duty and breached that duty.*

For individual liability to exist, the agent's actions must themselves be tortious. The Restatement of Agency states the general rule for the tort liability of agents in section 343:

> An agent who does an act *otherwise a tort* is not *relieved from liability* by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed.

RESTATEMENT (SECOND) OF AGENCY § 343 (1958) (emphasis added). Thus an agent is liable for the torts of fraud and duress (§ 348), trespass to land (§ 348A), and conversion (§ 349), even though he committed those torts while working for the principal.

Concerning negligence, the agent is liable only if he created an unreasonable risk of harm to a protected interest. Section 350 provides:

> An agent is subject to liability if, by his acts, he creates an unreasonable risk of harm to the interests of others protected against negligent invasion.

RESTATEMENT (SECOND) OF AGENCY § 350 (1958).

The principles stated in the Restatement of Agency are embodied in Texas law. For example, an agent who negligently causes an automobile accident is individually liable even though his employer is also liable under respondeat superior. As a driver, the agent owed a duty of care to the public, and it makes no difference that he was on the job for his employer when the accident happened. Similarly, an agent who defames someone in the course of his employment is individually liable. *See Leyendecker & Assocs. v. Wechter,* 683 S.W.2d 369, 375 (Tex. 1984). An agent may also be held personally liable for fraud and misrepresentations. *See Barclay v. Johnson,* 686 S.W.2d 334, 336–38 (Tex.App.–Houston [1st Dist.] 1985, no writ); *Duval County Ranch Co. v. Wooldridge,* 674 S.W.2d 332, 337 (Tex.App.–Austin 1984, no writ).

But under Texas law, the acts of the agent are not tortious unless he owes a duty to the injured person. And if the agent committed

no independent tort, he is not liable. In a comparable case, the supreme court held a grocery store supervisor not personally liable for his failure to give an employee instructions about lifting. *See J. Weingarten, Inc. v. Moore*, 449 S.W.2d 452, 453 (Tex.1970). Similarly, though a bank was subject to liability, its officers and employees were not liable for actions in the course of their employment which violated no individual duty to the injured party. *See Maxey v. Citizens Nat'l Bank*, 507 S.W.2d 722, 725–26 (Tex. 1974). On this issue, the *Maxey* court cited with approval *Russell v. Edgewood Indep. School Dist.*, 406 S.W.2d 249, 252 (Tex.Civ. App.–San Antonio 1966, writ ref'd n.r.e.). In *Russell* the court said, "As long as Steinhauser [the agent] was acting within the scope of his employment as a school superintendent he cannot be held personally liable in a tort action, except in such cases which involve individual and separate torts, such as assault, trespass, fraud or conversion."

The law was well summarized in *Southwestern Bell Telephone Co. v. Vollmer*, 805 S.W.2d 825, 830 (Tex.App.–Corpus Christi 1991, writ denied):

> When a duty is created by contract between an employer and a third party, the employee is not liable for the breach of that duty because the employee is not a party to the contract. *See Karl & Kelly Co. v. McLerran*, 646 S.W.2d 174, 175 (Tex. 1983). For an employee to be held liable, a breach of the duty to the employer is not enough; there must also be a separate breach of a duty owing to the plaintiff. *Maxey v. Citizens Nat'l Bank*, 507 S.W.2d 722, 725–26 (Tex.1974).

Leitch and Crews were not Hornsby's employers, and they owed no individual duty to furnish necessary equipment to him. Pro Com corporation owed him that duty because it was Pro Com that hired him. The employer owes a duty to furnish equipment to its employees. But the individuals involved in the corporation did not owe Hornsby the same duty as individuals.

The supreme court's opinions in *Light v. Wilson*, 663 S.W.2d 813 (Tex.1983), and *Karl & Kelly Co. v. McLerran*, 646 S.W.2d 174, 175 (Tex.1983), are consistent with the rules stated above. A fair reading of *Light* and *McLerran*, including Justice Spears' concurrence in *Light*, shows that in a Deceptive Trade Practices Act case, even if alter ego is not established, an agent acting for a principal may be individually liable provided he violated the DTPA himself.

Thus, I agree with the majority completely that when an actor commits a tortious act, he is not shielded from liability by the fact that he was acting for the corporation. But unless alter ego is established, corporate agents and officers are personally liable for their actions taken in the course of their employment only when they breached a duty that they owed as an individual to the injured person. As section 343 of the Restatement says, if the agent's conduct is "otherwise a tort," he is not "relieved from liability" by the mere fact that he was working for the principal.

On the subject of passive and active negligence, the cases cited by the majority seem to me inapplicable because they involved an agent's duty to protect the public from known dangerous conditions. In *Cornett v. Hardy*, 241 S.W.2d 186 (Tex.Civ.App.–Beaumont 1951, no writ), a truck owner and his driver were held liable for not warning a mechanic about the dangerous condition of a tire rim they asked the mechanic to service. The court said the driver could be held liable for failure to warn of a known dangerous condition, even though this might be "nonfeasance." *Id.* at 191–92. In *Kenney v. Lane*, 9 Tex.Civ.App. 150, 36 S.W. 1063 (1894, no writ), an agent repairing a bridge for its owner had failed to install protective boarding to shield persons below from falling metal rollers. The agent argued he was not liable for "nonfeasance." The court held that an agent can be held liable for nonfeasance, or failure to act, if he owes a duty of care to the public. The court spoke of the duty of care imposed upon the agent "as a responsible individual, in common with all other members of society." *Id.* at 1063.

Hornsby's alter ego theory was resolved adversely to him by the jury. His other theory of personal liability is invalid because Leitch and Crews did not individually owe him a duty to furnish a lifting belt or a dolly.

The employer, ProCom, owed Hornsby that duty.

When the next such case is tried, with this case as a precedent, will the individual defendants be stripped of defenses under the Act simply because the corporate employer chose not to be a subscriber? The majority makes them potentially liable individually for failure to take action that was the corporation's responsibility.

I would hold that Hornsby cannot recover from the individual defendants, and as to them I would reverse and render a take-nothing judgment.