MRS. F. W. EATON ET VIR V. R. B. GEORGE INVESTMENTS, INCORPORATED.

No. A-4003. Decided July 15, 1953.
Rehearing overruled October 7, 1953.
(260 S.W. 2d. Series 587)

524

*Robertson, Jackson, Payne, Lancaster & Walker,* of Dallas, and *Roland Boyd,* of McKinney, for petitioners.

On the issue of whether the child was an invitee on the premises at the time of her death, and of her status as a licensee, Willeke v. Bailey, 144 Texas 157, 189 S.W. 2d 477; Bohn Bros. v. Turner, 182 S. W. 2d 419; Texaco Country Club v. Wade, 163 S. W. 2d 219; Gulf Production Co. v. Quisenberry, 128 Texas 347, 97 S. W. 2d 166.

*Leachman, Matthews & Gardere,* and *Henry D. Akin,* of Dallas, for respondent.

Since the evidence was sufficient to warrant the jury in finding that the child was not an invitee but, at most, was a licensee at the place where she met her death respondent did not owe her the duty of ordinary care, but only the duty not to willfully or intentionally injure her. Dobbins v. Missouri, K. & T. Ry. Co., 91 Texas 60, 41 S.W. 62, 38 L.R.A. 573, 66 Am. St. Rep., 856; Carlisle v. Weingarten, 137 Texas 229, 152 S.W. 2d 1073; Cowart v. Meeks, 131 Texas 36, 111 S.W. 2d 1105.

MR. JUSTICE CALVERT delivered the opinion of the Court.

The opinion handed down in this case on May 6th is withdrawn and the following is substituted therefor:

This is a suit for damages growing out of the drowning in a cattle dipping vat of Ginger Dale Ensley, three-year-and-eight-months-old stepdaughter of F. W. Eaton.

The pleading on which the plaintiffs went to trial shows beyond any doubt that the effort to establish liability of the defendant was predicated on the so-called attractive nuisance doctrine as that doctrine is held to give rise to an implied invitation

to children to come on premises and play about unusually attractive structures. The petition alleged that Eaton was employed by the defendant on its Glad Acres Farm a short time before the tragedy and that he was furnished living quarters for his family near the dipping vat where the drowning occurred. It described the vat and the fences and continued: "The defendant herein knew, or should have known, that the white fences which go to make up the chute would be attractive to the children of defendants' tenants, laborers, servants and employees, who would necessarily be on the premises and would be living in the living quarters assigned to them by this defendant, and that the defendant should have foreseen that the fences and chute would constitute an alluring object to children, and that children would be attracted by them and would find pleasure in climbing on, through and under said fences, and in running, romping and playing along said chute, and that children so allured would be trapped in said dipping vat which contained water of sufficient depth to completely immerse cattle and was dangerous to children * * *."

It was further alleged that the plaintiffs did not know of the existence of the vat, thinking that the chute was only a loading chute, and that the defendant was negligent in failing to warn them of the existence thereof and in leaving the same unguarded and uncovered.

It is also clear that the case was submitted to the jury on the attractive nuisance theory. In answer to the first issue the jury found that "the white fences and chute in question which led to the dipping vat in question" were not "unusually attractive to children such as Ginger Dale Ensley", and, having so answered, did not answer issues conditioned on an affirmative answer to the first issue, and inquiring: (2) whether the defendant should have foreseen that the white fences and chute leading to the vat were unusually attractive to children (3) whether the white fences, chute and vat were dangerous to children; (4) whether Ginger Dale understood that the fences, chute and vat were dangerous; (5) whether Ginger Dale was attracted by the white fences and chute which led to the vat; (6) whether the defendant was negligent in permitting the white fences, chute and vat to be on the premises under existing circumstances and such negligence was a proximate cause of the child's death.

In answer to issues submitted unconditionally the jury found

that the failure of the defendant to warn the plaintiffs of the existence of the vat was negligence which was a proximate cause of the child's death; that the failure of the defendant to cover the vat was negligence which was a proximate cause of the child's death; that the death was not an unavoidable accident; that neither the child nor the plaintiffs were guilty of any acts or omissions constituting contributory negligence, and that Mrs. Eaton had suffered damages in the sum of $11,597.50.

Upon return of the jury's verdict both parties filed motions for judgment. The plaintiffs' motion was overruled and defendant's motion was granted. The theory on which the defendant's motion was granted was that the jury's negative answer to the first issue took out of the cast any implied invitation to the child to be on the premises where the vat was located by virtue of the attractive character thereof, leaving her a bare licensee or a trespasser to whom the defendant owed no duty to use ordinary care for her safety. The trial court's judgment was affirmed by the Dallas Court of Civil Appeals. 254 S. W. 2d 189. The opinion of the Court of Civil Appeals contains a detailed statement of the evidence, a picture of the chute and vat, and a plat of the premises which may be examined for a better understanding of the factual background of the case.

Generally speaking, the judgment of the Court of Civil Appeals is founded on the same reasoning as was the judgment of the trial court. The court states: "It is clear from the above record that the attractive nuisance doctrine went out of the case when the jury answered Special Issue No. 1. The only material question raised by the points (plaintiffs' points of error), is whether the case was submitted to the jury on two theories, one under the attractive nuisance doctrine, the other based on the theory that the child was an invitee on the premises involved, and as such invitee, the defendant owed to her the duty to exercise ordinary care". After reviewing the evidence the court concluded: "In our opinion the record here did not raise an issue of fact on the question of invitee, but shows the child at the place where she met her death, was at most a licensee."

The plaintiffs as petitioners here continue to press their claim that the child was an invitee at the place where drowned, wholly aside from the fact that under the jury finding she did not occupy that status from an implied invitation arising out of the unusually attractive character of the structure where she met her death.

■ We have set out the procedural developments in the various stages of the case because we are convinced that they demonstrate that the parties to the cause and the courts below have failed to appreciate and evaluate fully the opinion of this court in the case of Banker v. McLaughlin, 146 Texas 434, 208 S. W. 2d 843, 8 A.L.R. 2d 1231. Whatever may have been the rule in this state prior to the Banker decision, it is now clear that a landowner cannot escape liability for bodily harm to trespassing children caused by a structure or other artificial condition maintained on his land by simply establishing that such structure or other artificial condition was not unusually attractive to children. In the Banker case this court approved and adopted the rule laid down in Volume 2, p. 920, Sec. 339 of the Restatement of the Law of Torts wherein it is said: "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

See also Prosser on Torts, Sec. 77, pp. 620-625.

In the Restatement comment on Clause (a) above it is said: "It is not necessary that the defendant should know that the condition which he maintains upon his land is likely to attract the trespasses of children or that the children's trespasses shall be due to the attractiveness of the condition." Just so also this court said in the Banker case that "the element of attraction is important only in so far as it may mean that the presence of children was to be anticipated"; and again: "It is of course immaterial also whether the dangerous condition be in close proximity to a path or highway, as is held in some cases, since that fact merely bears on whether the presence there of members of the public is reasonably to be anticipated. Whether the

dangerous condition is an 'attractive nuisance' is also merely a circumstance bearing on the same question"; and again, quoting from Posser on Torts, 1941, p. 619: " 'The better authorities now agree that the elements of "attraction" is important only in so far as it may mean that the trespass is to be anticipated, and that the basis of liability is merely the foreseeability of harm to the child' "; and again: "nor is it important for what purpose a person (impliedly invited) enters premises on which a dangerous condition is maintained, provided his presence there is reasonably anticipated. Nor is it important for the same reason, whether the dangerous condition is visible from traveled ways."

The court openly recognized that what was said was squarely in conflict with Dobbins v. Missouri K. & T. Ry. Co., 91 Texas 60, 41 S. W. 62, 38 A.L.R. 573, 66 Am. St. Rep. 856 (largely relied on by defendant in this case) but declined to follow the Dobbins case. There is no doubt that what was said was squarely in conflict also with other prior decisions of this court and the courts of civil appeals. This is made all the more apparent by a reading of the vigorous dissent filed by two members of the court.

No good purpose would be served by a review of the decisions on the subject rendered by our courts prior to the Banker decision. An excellent review of many is contained in the dissenting opinion in that case. It is enough to note that the law of the Banker case is now the law of this state. In Massie v. Copeland, 149 Texas 319, 233 S. W. 2d 449, 451, we reaffirmed our position that liability would exist if the four conditions listed in the Banker case and in Sec. 339 of the Restatement of the Law of Torts were satisfied, and said: "But attractive nuisance cases are not ordinary cases of negligence. On humane considerations, the duty arises to exercise care for the protection of indiscreet children of tender years who, although they are trespassers, may come in contact with instrumentalities or conditions the danger of which they are unable to appreciate on account of their youth and consequent indiscretion".

The same rule in somewhat different language was recognized by the United States Court of Appeals for the 5th Circuit in the case of Stanolind Oil & Gas Co. v. Franklin, 139 Fed. 2d 561, 563, when it said: "The fact that a child may be a trespasser does not necessarily exonerate the owner of premises accessible to children, and likely to be frequented by them, from the duty

to take reasonable precautions for their safety. Under ordinary conditions, trespassing children occupy the same position as trespassing adults; and the tender age of a child, rendering it incapable of lookjng out for its own safety, does not raise a duty where none otherwise exists. To warrant recovery for injury to a trespassing child, it must be shown that the injury was caused by the negligence of the owner or occupant after the presence of the trespassing child upon the premises was known to him *or reasonably should have been foreseen by him.*" A reading of the opinion of the court will reflect that a judgment for the plaintiff was affirmed, not on the theory that the defendant's shop wherein the child was injured was an attractive nuisance but on the theory that the defendant should have known that children would likely go into the shop to their injury unless it was kept locked.

The effect of these late cases is to abolish as to young children the distinction between trespassers, licensees and invitees when the four conditions have been satisfied and to impose on the landowner under such circumstances a duty of ordinary care to protect them from injury. For interesting comments on the impact of the Banker decision, see case note by Vickery, 26 Tex. Law Rev. 821; Landowners' Responsibility to Children by Leon Green, 27 Tex. Law Rev. 1, and Banker v. McLaughlin; Extension of Attractive Nuisance Doctrine in Texas? by S. T. Morris, 11 Texas Bar Journal 481.

■ It will be noted that although the jury in this case found that the structure involved was not unusually attractive to children, it nevertheless found that the defendant was negligent in failing to warn of the presence of the vat and in failing to cover the same and that each such negligent act was a proximate cause of the child's death. The finding that the defendant's negligence was a proximate cause of the child's death was a finding that the defendant should reasonably have foreseen that the child would be injured. That finding necessarily included a finding that the defendant should reasonably have foreseen that the child would go about the structure for it could not have been injured unless it first went there. Thus at appears that the crucial issue of foreseeability of the child's presence at the structure was found in plaintiff's favor. Here we have a jury finding in plaintiffs favor fulfilling condition (a) above set out.

Likewise it may be said that the jury's finding that the defendant was negligent in failing to warn of the presence of

the vat and in failing to cover the same included a finding that the defendant knew and realized or should have known and realized that the maintenance of the uncovered vat involved an unreasonable risk of death or serious bodily harm to the child for unless he did so defendant could not have been negligent in the respects mentioned. Here, then, we have a jury finding in plaintiffs' favor fulfilling condition (b).

■ We hold as a matter of law that a child of the tender age of Ginger Dale Ensley could not have realized the risk or danger in going about the vat and condition (c) is fulfilled. Gulf Production Co. v. Quisenberry, 128 Texas 347, 97 S.W. 2d 166; 107 A.L.R. 4,100.

■ Defendant's own witnesses testified that the vat had not been used for dipping for over two years—the cattle being sprayed instead—and that it therefore had no utility to the defendant at the time, and that covering it would have been a "simple matter" requiring "a couple of hours with a saw and hammer" and entailing expense of about $30.00. As a matter of law condition (d) is fulfilled.

From what has been said it follows that the trial court erred in overruling plaintiff's motion for judgment and in granting defendant's motion for judgment, and that the Court of Civil Appeals erred in affirming the judgment of the trial court. Ordinarily, these conclusions would require us to reverse the judgments of the courts below and here render judgment for the plaintiffs but it is obvious that this case has been tried on the wrong theory since the moment of its filing. The plaintiffs' petition reflects a belief that the defendant would not be liable in damages for the child's death unless the child was lured on the premises by the unusually attractive character of the structure. The issues submitted, unobjected to by either of the parties, clearly indicate that both the trial court and the parties regarded the attractive character of the structure as controlling the rights of the parties rather than as an evidentiary factor in the issue of foreseeability. The judgment of the trial court granting defendant's motion therefor was rendered on the theory that since the structure was not unusually attractive to children the child had no implied invitation to enter the premises and was no more than a trespasser or bare licensee to whom the defendant owed no duty other than not to wilfully or intentionally injure her. The trial court's judgment was affirmed by the Court of Civil Appeals on the theory that the doctrine

of attractive nuisance went out of the case with the jury's negative finding to the first issue and that the child therefore occupied the status of a licensee on the premises where drowned to whom the defendant owed no duty of ordinary case. Under all the foregoing circumstances it seems in the interest of justice that we exercise our right under Rule 505, Texas Rules of Civil Procedure, to remand the case for another trial. Benoit v. Wilson, 150 Texas 273, 239 S.W. 2d 792.

What we have said should not be taken as an approval of the manner in which the issues were submitted in this case.

■ While a finding that a given act is a proximate cause of an injury will always include a finding of foreseeability of presence, a finding of foreseeability of presence will never include a finding of foreseeability of injury resulting from the manner in which a structure is erected or maintained. A landowner owes no duty to a child in this type of case unless the child's presence at or on the structure is or reasonably should be foreseen and anticipated. A submission, fair to the defendant, will therefore require a separate and preliminary submission of the primary issue of foreseeability of presence in keeping with condition (a) above. The other issues should be submitted to be answered by the jury only in the event an affirmative answer is given to the first issue. A contingent submission of the other issues will avoid conflicting findings.

■ If raised by the pleadings and the evidence, and not concluded as a matter of law, the other issues should be framed to fit the facts involved and should include: (1) Whether the defendant was negligent in maintaining the structure or condition as it existed. (2) Whether such negligence was a proximate cause of the child's injuries or death. (3) Whether the child was negligent in going about or playing on the structure or condition. (4) Whether such negligence was a proximate cause of the child's injuries or death. The element of the utility of the structure or condition to the defendant and the cost of correcting its dangerous character as compared to the risk to the child is included in the issue on the defendant's negligence. These issues, coupled with appropriate and time-honored definitions of "negligence" as applied to adults and to children "ordinary care", "proximate cause", and "new and independent cause" will generally serve to satisfy all requirements outlined in the Restatement of Torts and in the Banker case in suits for damages sustained by a child, to which may be added appropriate

issues of contributory negligence of parents in suits for damages sustained by them by virtue of the injuries to or death of the child.

The judgments of the courts below are reversed and the cause is remanded for retrial.

The parties shall have fifteen days from this date in which to file motions for rehearing.

Opinion delivered July 15, 1953.

Justices Wilson and Culver dissent for the reasons stated in the dissenting opinion in the case of Banker v. McLaughlin, 146 Texas 434, 208 S.W. 2d 843, 8 A.L.R. 2d 1231.

Rehearing overruled October 7, 1953.