In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-251 CV


____________________



HARDIN COUNTY, Appellant



V.



OTIS SMART and RACHEL SMART, 


Individually and as Next Friend of COY BRYCE SMART, Appellees






On Appeal from the 88th District Court


Hardin County, Texas


Trial Cause No. 44,673






MEMORANDUM OPINION


 Otis Smart and Rachel Smart, individually and as next friend of C.B.S. ("the Smarts"),
sued Hardin County under the Texas Tort Claims Act (1) after C.B.S. sustained severe hand
injuries at the Hardin County Courthouse when his fingers were closed in the hinge side of
a public restroom door. In a single pleading, Hardin County filed a first amended plea to the
jurisdiction and traditional and no-evidence motions for summary judgment, all of which the
trial court denied. Hardin County perfected interlocutory appeal of the portion of the order
denying the amended plea to the jurisdiction. See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(8) (Vernon Supp. 2006). Additionally, by agreement of the parties, the trial court
certified for immediate interlocutory appeal that portion of its order denying the motions for
summary judgment. See id. § 51.014(d). This Court granted the "Joint Application for
Interlocutory Appeal" of the summary judgment denials. See id. § 51.014(e). The Texas
Supreme Court has recently reaffirmed our jurisdiction over an interlocutory appeal when
a trial court denies a governmental unit's challenge to subject matter jurisdiction, irrespective
of the procedural vehicle used. See Thomas v. Long, 49 Tex. Sup. Ct. J. 532, 2006 WL
1043429, at *4 (Tex. April 21, 2006).

 As the basis for its amended plea to the jurisdiction, Hardin County argued the Texas
Tort Claims Act's waiver of immunity does not apply in this case because the county
installed the bathroom door in question prior to the Act's enactment date. Alternatively,
Hardin County's no-evidence summary judgment argued there was no record evidence that
any alleged defect of the door's closing mechanism was the proximate cause of the child's
injuries. Additionally, Hardin County contended Laurie Redd's failure to supervise the child
was the sole cause of the injuries, and that Rachel Smart's and Laurie Redd's actual
knowledge of the alleged dangerous condition of the door precluded recovery under a
premises liability cause of action. In three appellate issues, Hardin County contends the trial
court erred in denying the summary judgment motions and plea to the jurisdiction because
of: (1) the lack of any proof of proximate cause; (2) the fact C.B.S. and his aunt, Laurie
Redd, were licensees on the premises and Laurie Redd was actually aware of the alleged
dangerous condition; and (3) the fact that both the restroom door and the closing mechanism
were installed prior to January 1, 1970. We reverse and dismiss the cause for lack of subject
matter jurisdiction under the first issue. As this is dispositive of the entire appeal, we do not
decide the remaining issues.

Background


 The undisputed evidence reveals C.B.S., a four-year-old boy, and Laurie Redd, his
aunt, went to the Hardin County courthouse cafe to eat lunch. At the time of the incident,
Ms. Redd had been working part-time for the courthouse cafe for the preceding eight years. 
Ms. Redd admitted to having used the restroom in question "fairly often for the past eight
years." She also stated that the day of the incident was the first time she had permitted
C.B.S. to go to a public restroom alone. Nevertheless, C.B.S. wanted to use the restroom and
Redd allowed him to go by himself. C.B.S. walked down a hallway, and, a short time later,
Redd heard him call her name and then scream. When Redd reached the restroom, she
observed C.B.S.'s index and middle fingers stuck in the hinge side of the door. Redd pushed
the door open and C.B.S. removed his hand. His index finger was partially severed and his
middle finger was also injured. During her deposition, Redd admitted to having "100
percent" responsibility for C.B.S. at the time of his injuries. However, she added, "I thought,
you know, that he could do this on his own. I didn't think that a door - - or that he would get
injured in any way." Redd further admitted that she was not aware of anyone's having been
injured by the restroom door in question. She stated that on prior occasions she and her
mother, another cafe employee, had talked about the restroom door's "being loud." 

SOVEREIGN IMMUNITY


 "Sovereign immunity protects the State from lawsuits for money damages." Tex.
Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 853 (Tex. 2002). Political
subdivisions of the state, including counties, are entitled to such immunity - - referred to as
governmental immunity - - unless it has been waived. (2) It is undisputed that Hardin County
is a political subdivision of the State of Texas. See Tex. Civ. Prac. & Rem. Code Ann. §
101.001(3)(B) (Vernon 2005). Sovereign immunity encompasses immunity from suit, which
bars a suit unless the state has consented, as well as immunity from liability, which protects
the state from judgments even if it has consented to the suit. See Tex. Dep't of Transp. v.
Jones, 8 S.W.3d 636, 638 (Tex. 1999). Sovereign immunity from suit deprives a trial court
of subject matter jurisdiction and is, therefore, properly asserted in a plea to the jurisdiction. 
See Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004); Jones, 8
S.W.3d at 638. The Tort Claims Act's limited waiver of sovereign immunity further
provides that immunity from suit and immunity from liability are co-extensive. See Tex.
Civ. Prac. & Rem. Code Ann. § 101.025(a) ("Sovereign immunity is waived and abolished
to the extent of liability created by this chapter."); see also Miranda, 133 S.W.3d at 224. 
This provision has the somewhat anomalous effect of permitting the trial court to examine
the merits of a plaintiff's claims simultaneously with an evaluation of subject matter
jurisdiction when a governmental unit's plea to the jurisdiction challenges the existence of
jurisdictional facts. See Miranda, 133 S.W.3d at 226. We describe the effect of section
101.025(a) as "anomalous" because "[a]s a general proposition before a court may address
the merits of any case, the court must have jurisdiction over the party or the property subject
to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment,
and capacity to act as a court." See State Bar of Tex. v. Gomez, 891 S.W.2d 243, 245 (Tex.
1994). Therefore, a trial court "must determine at its earliest opportunity" whether it has,
inter alia, subject matter jurisdiction over the litigation before it. See Miranda, 133 S.W.3d
at 226. Moreover, because the question of subject matter jurisdiction implicates a court's
authority to act, it cannot be waived or procedurally forfeited and may be raised for the first
time on appeal. See Waco Indep. Sch. Dist. v. Gibson, 22 S.W.3d 849, 850 (Tex. 2000). 

 A plaintiff wishing to sue a governmental unit may only do so within the provisions
of the Tort Claims Act, or other such legislation. (3) In any civil suit, the plaintiff bears the
burden of stating a cause of action in its pleadings upon which the trial court has jurisdiction. 
It is no different when a plaintiff sues a governmental unit, except the plaintiff may wish to
plead more factual details to ensure that the claim fits within one or more of the Tort Claims
Act's provisions so as to demonstrate waiver of sovereign immunity and subject matter
jurisdiction of the trial court. See Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540,
542-43 (Tex. 2003); Tex. Dep't of Criminal Justice v. Miller, 51 S.W.3d 583, 587 (Tex.
2001); Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). Under
the provisions of the Tort Claims Act, the plaintiff has the burden of alleging facts that
affirmatively establish the trial court's subject matter jurisdiction. Tex. Ass'n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d at 446. As Justice Jefferson (4) noted in his dissent, a plaintiff's
pleadings in such a case "must be viewed . . . through the prism of sovereign immunity,
which deprives a court of jurisdiction unless the State has expressly waived immunity. The
plaintiffs' pleadings against the State must affirmatively establish jurisdiction to overcome
the contrary presumption." Miranda, 133 S.W.3d at 238 (Jefferson, J., dissenting)(citations
omitted).

STANDARD OF REVIEW


 "Whether a court has subject matter jurisdiction is a question of law." Miranda, 133
S.W.3d at 226; IT-Davy, 74 S.W.3d at 855. Whether the plaintiff has alleged sufficient facts
to affirmatively demonstrate a trial court's subject matter jurisdiction is also a question of
law reviewed de novo. See Miranda, 133 S.W.3d at 226. In suits filed under provisions of
the Tort Claims Act, whether undisputed evidence of jurisdictional facts has or has not
established a trial court's subject matter jurisdiction has also been held to be a question of
law. Id. Therefore, when the relevant evidence is undisputed, or fails to raise a fact question
on the jurisdictional issue, the trial court may rule on the plea to the jurisdiction as a matter
of law. Id. Recognizing this standard's similarity to that of summary judgment under Tex.
R. Civ. P. 166a(c), as well as its utilitarian effect in such cases, the Miranda Court provided
the following rationale:

 This standard . . . protects the interests of the state and the injured claimants
in cases like this one, in which the determination of the subject matter
jurisdiction of the court implicates the merits of the parties' cause of action. 
The standard allows the state in a timely manner to extricate itself from
litigation if it is truly immune. However, by reserving for the fact finder the
resolution of disputed jurisdictional facts that implicate the merits of the claim
or defense, we preserve the parties' right to present the merits of their case at
trial. Similar to the purpose of a plea to the jurisdiction, which is to defeat a
cause of action for which the state has not waived sovereign immunity (usually
before the state has incurred the full costs of litigation), the purpose of
summary judgments in Texas is "'to eliminate patently unmeritorious claims
and untenable defenses.'" Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989)
(quoting City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 n.5
(Tex. 1979)). By requiring the state to meet the summary judgment standard
of proof in cases like this one, we protect the plaintiffs from having to "put on
their case simply to establish jurisdiction." Bland [Indep. Sch. Dist. v. Blue],
34 S.W.3d [547,] 554 [(Tex. 2000)]. Instead, after the state asserts and
supports with evidence that the trial court lacks subject matter jurisdiction, we
simply require the plaintiffs, when the facts underlying the merits and subject
matter jurisdiction are intertwined, to show that there is a disputed material
fact regarding the jurisdictional issue. See Huckabee v. Time Warner Entm't
Co. L.P., 19 S.W.3d 413, 420 (Tex. 2000); Phan Son Van v. Pena, 990 S.W.2d
751, 753 (Tex. 1999). 


Miranda, 133 S.W.3d at 228. The Miranda court recognized that in some cases, the evidence
of jurisdictional facts can be so inextricably linked to the merits of the controversy that the 
jurisdictional determination may have to be deferred until the parties have had sufficient time
to develop the evidence of the case. Miranda, at 226. Justice Brister, in his dissent,
recognized that in such situations, summary judgment may be the better procedural vehicle
to accomplish this. See Miranda, at 241-243 (Brister, J., dissenting). 

 When a no-evidence motion for summary judgment is filed, the non-movant must
respond by producing probative summary judgment evidence that raises a genuine issue of
material fact on each challenged element of a claim or defense. See Ford Motor Co. v.
Ridgway, 135 S.W.3d 598, 600-01 (Tex. 2004). In response to the government's challenge
to the trial court's jurisdiction in a no-evidence motion for summary judgment, the plaintiff
must produce evidence affirmatively demonstrating the trial court's subject-matter
jurisdiction. See generally, Miranda, 133 S.W.3d at 228-29; Miller, 51 S.W.3d at 586-87. 


WAIVER OF IMMUNITY UNDER SECTION 101.021


 The legislature has provided a limited waiver of sovereign immunity for personal
injuries and deaths proximately caused by a condition or use of tangible personal or real
property if the governmental unit in question would, were it a private person, be liable to the
claimant under Texas law. Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). "In a suit
against a governmental unit, the plaintiff must affirmatively demonstrate the court's
jurisdiction by alleging a valid waiver of immunity." Whitley, 104 S.W.3d at 542; see also 
Miller, 51 S.W.3d at 587. When we consider a trial court's order on a plea to the
jurisdiction, we construe the pleadings in the plaintiff's favor and look to the pleader's intent. 
See Tex. Ass'n of Bus., 852 S.W.2d at 446. We begin by examining the Smarts' pleadings
and any pertinent jurisdictional evidence. The operative paragraphs in the Smarts' live
pleadings read as follows:

III.


 On the date in question, the bathroom door that severed the child's
finger was in a defective condition which posed an unreasonable risk of harm. 
Furthermore, Hardin County knew or reasonably should have known of the
danger posed by the door that severed the child's finger and failed to exercise
ordinary care to protect the child from the danger, by both failing to adequately
warn of the condition and failing to make the condition reasonably safe. 


IV.


 Liability of the County is asserted pursuant to Section 101.001 of the
Texas Civil Practice and Remedies Code, commonly referred to as the Texas
Tort Claims Act. 

These pleadings attempt to demonstrate waiver of sovereign immunity under the provisions
of section 101.021(2) by alleging premises defect. See Tex. Dep't of Transp. v. Able, 35
S.W.3d 608, 612 (Tex. 2000). We reiterate that whether a court has subject matter
jurisdiction is a question of law. Miranda, 133 S.W.3d at 226. 

 Apart from the language of section 101.021(2), recovery for premises liability based
on the condition of real property is further restricted by section 101.022, which, in relevant
part, imposes upon the State the duty that a private landowner owes a licensee. Tex. Civ.
Prac. & Rem. Code Ann. § 101.022(a); State Dep't of Highways & Pub. Transp. v. Payne,
838 S.W.2d 235, 237 (Tex. 1992). Generally, the duty a landowner owes a licensee is to "not
injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use
ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition
of which the owner is aware and the licensee is not." Payne, 838 S.W.2d at 237. Therefore,
the elements of proof required to establish a breach of this duty, absent willful, wanton or
grossly negligent conduct which the Smarts did not plead or attempt to prove, are as follows: 
(1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the
owner actually knew of the condition; (3) the licensee did not actually know of the condition;
(4) the owner failed to exercise ordinary care to protect the licensee from danger; and (5) the
owner's failure was a proximate cause of the injury to the licensee. Id.

 

PROXIMATE CAUSE


 Section 101.021(2) requires, inter alia, that for immunity to be waived, the personal
injury must be proximately caused by the condition of the property in question. Dallas
County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 343 (Tex. 1998). 
Proximate cause consists of both cause-in-fact and foreseeability. Travis v. City of Mesquite,
830 S.W.2d 94, 98 (Tex. 1992). Cause-in-fact is established when the act or omission was
a substantial factor in bringing about the injury without which the harm would not have
occurred. West. Invs., Inc. v. Urena, 162 S.W.3d 547, 551, (Tex. 2005). This element cannot
be established by mere conjecture, guess, or speculation. Id. (quoting Doe v. Boys Clubs of
Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995)). Since the government challenges
subject-matter jurisdiction in a no-evidence motion for summary judgment by challenging
proximate cause, we look for evidence of a disputed material fact regarding the cause-in-fact
element of proximate cause. 

 An examination of all the jurisdictional evidence in the record merely indicates that
by the time Laurie Redd reached the scene of the accident, the child's fingers had already
been injured by the restroom door, which had closed automatically via the closing
mechanism. However, as noted above, there is no evidence to indicate how the child's
fingers found their way into the hinge side of the door. Whether the child, oblivious to the
consequences, placed them there intentionally, or by accident, is not indicated. (5) Furthermore,
the Smarts failed to allege or provide evidence to show that the child would have removed
his hand even had the door mechanism been adjusted to close at a snail's pace. (6) There is no
evidence that the child's injury was enhanced by the adjustment of the door closing
mechanism. There is nothing in the record to indicate the four year-old child possessed the
cognitive ability to appreciate the danger of failing to remove fingers from the hinge side of
a closing door prior to its shutting all the way. (7) Under the facts and circumstances presented
in the record, the Smarts have only established that the restroom door's mechanical closing
process did no more than furnish the condition that made C.B.S.'s injuries possible. See
Union Pump Co. v. Allbritton, 898 S.W.2d 773, 776 (Tex. 1995). Under the particular record
before us, the connection between how the restroom door was functioning at the time in
question and the child's injuries appears too attenuated to constitute legal cause. Id. The
Smarts, therefore, failed in both their pleadings and jurisdictional evidence to satisfy the 
cause-in-fact portion of the proximate cause element necessary for establishing the state's
consent to suit under section 101.021(2) of the Tort Claims Act. See Miranda, 133 S.W.3d
at 232. As such, the trial court lacked subject matter jurisdiction. See id. Issue one is
sustained. We reverse the trial court's hybrid order in this consolidated appeal, and render
judgment dismissing this cause for lack of subject matter jurisdiction.

 REVERSED AND RENDERED.



 __________________________________

 CHARLES KREGER

 Justice


Submitted October 10, 2005

Opinion Delivered September 28, 2006



Before Gaultney, Kreger and Horton, JJ.

CONCURRING OPINION


 I concur with the judgment of the majority. It seems to me a reasonable inference the
County knew the door was operating defectively. It also seems a reasonable inference the
child would have removed his fingers if the door had closed with less force. It is reasonable
to assume the child did not fully appreciate the danger of putting his fingers in the hinge side
of the door; but the premises defect -- the slamming of the door -- did not cause the child to
put his fingers in the hinge side of the door, unless we allow the attractive nuisance doctrine 
to apply. See generally Banker v. McLaughlin, 146 Tex. 434, 208 S.W.2d 843, 847-48
(1948). We cannot use that doctrine in a claim under the Texas Tort Claims Act. See Tex.
Civ. Prac. & Rem. Code Ann. § 101.059 (Vernon 2005). As the majority notes, the doctrine
has not been pled, and even if it had been pled the Legislature has precluded its use in this
claim against the County under the Act. See id. Compare Lawrence v. City of Wichita
Falls, 906 S.W.2d 113, 115-18 (Tex. App.--Fort Worth 1995, writ denied). 

 Section 101.025 of the Texas Tort Claims Act waives a governmental unit's immunity
from suit "to the extent of liability created" by the Act. See Tex. Civ. Prac. & Rem. Code
Ann. § 101.025(a) (Vernon 2005); Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d
217, 224 (Tex. 2004); Tex. Dep't of Transp. v. Ramirez, 74 S.W.3d 864, 866 (Tex. 2002). 
If the Act "creates" no liability for the tort, the County retains any immunity from suit. See
generally Ramirez, 74 S.W.3d at 866. If the County is immune from suit, the district court
lacks subject matter jurisdiction to consider the claim against the governmental unit and must
dismiss the claim. See Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 696, 701 (Tex.
2003). The undisputed facts establish a lack of legal causation, and the claim must therefore
be dismissed. 

 This is a premises defect claim. The door mechanism is part of the building. See
generally Univ. of Tex. Med. Branch at Galveston v. Davidson, 882 S.W.2d 83, 86 (Tex.
App.--Houston [14th Dist.] 1994, no writ) (elevator). In general, with certain exceptions, a
governmental unit owes a plaintiff on the government's premises the duty a private
landowner would owe a licensee, rather than an invitee. See Tex. Civ. Prac. & Rem. Code
Ann. § 101.022(a)(Vernon Supp. 2006). When a landowner has actual knowledge of a
dangerous condition on the premises that the licensee does not know about, the landowner
owes a duty to warn the licensee or to make the condition reasonably safe. See State v.
Williams, 940 S.W.2d 583, 584 (Tex. 1996).

 The limitation of the County's duty to that owed a licensee has exceptions not
applicable here. See Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a),(b),(c) (Vernon Supp.
2006); see also Clay v. City of Fort Worth, 90 S.W.3d 414, 417 (Tex. App.--Austin 2002, no
pet.). This defect was not so unexpected or unusual as to constitute a special defect. See
generally State Dep't of Highways & Pub. Transp. v. Kitchen, 867 S.W.2d 784, 786 (Tex.
1993)(icy bridge conditions not special defect); Villarreal v. State, 810 S.W.2d 419, 422
(Tex. App.--Dallas 1991, writ denied.).("[A] special defect must be something out of the
ordinary course of events rather than a long-standard, routine, or permanent defect."). In
fact, the adult who was with the child at the courthouse was familiar with the condition of
the door. Appellees argue that it is "a matter of common knowledge, however, that children
place their fingers in dangerous and inappropriate places all of the time." I interpret this as
an argument that a higher duty is owed because the injured party is a child. See, e.g., Eaton
v. R. B. George Invs., Inc., 260 S.W.2d 587, 591 (Tex. 1953) ("We hold as a matter of law
that a child of the tender age of [the injured party] could not have realized the risk or danger
. . . ."). 

 The landowner's duty to an adult licensee does not extend to a condition that is known
to the licensee. See Wal-Mart Stores, Inc. v. Miller, 102 S.W.3d 706, 709 (Tex. 2003). 
Because a child may be incapable of understanding a danger that is apparent to an adult, 
courts sometimes apply the attractive nuisance doctrine to impose a heightened duty of care
on a private landowner. See Eaton, 260 S.W.2d at 589-591; Banker, 208 S.W.2d at 847; see
also, generally, Wal-Mart Stores, Inc. v. Lerma, 749 S.W.2d 572, 575 (Tex. App.--Corpus
Christi 1988, no writ) ("Likewise, a prudent owner or occupier should be aware that a risk
of harm is present when certain fixtures, though not normally dangerous, attract young
children to use them in an unintended, but reasonably foreseeable manner."). The effect of
the doctrine is to abolish as to young children the distinction between trespassers, licensees,
and invitees when the requirements of the doctrine are satisfied. See Eaton, 260 S.W.2d at
591; see also Restatement (Second) of Torts § 343B cmt. b (1965). (The principles of
the attractive nuisance doctrine are equally applicable when the child is a licensee or an
invitee rather than a trespasser.). 

 The attractive nuisance doctrine does not apply in a premises defect claim against a
governmental unit under the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code
Ann. § 101.059 ("This chapter does not apply to a claim based on the theory of attractive
nuisance."). Courthouse maintenance by a County is a governmental function. Common law
governmental immunity would bar an attractive nuisance claim against the County. See
generally Lawrence, 906 S.W.2d at 115-18 (Governmental units other than municipalities
perform governmental functions exclusively.). I read section 101.059 as meaning the
County's legal duty is the same under the Texas Tort Claims Act whether the plaintiff is a
child or an adult, because the attractive nuisance doctrine cannot be used by a court to
heighten the duty of care owed under the Act. 

 The legal duty owed an adult licensee here would be to permit the safe and proper use
of the door as an entry way, or to warn about dangers involved in its proper use as an entry
way. The duty would not extend to warning adult licensees to refrain from placing their
fingers in the hinge side of the door; that is a danger apparent to all. 

 The County's alleged breach of the legal duty to provide a safe entry way was not a
legal cause of the injuries suffered in this case. To be a legal cause of the injuries, the
condition must have done more than make the injury possible. See generally Western Invs.,
Inc. v. Urena, 162 S.W.3d 547, 551 (Tex. 2005); IHS Cedars Treatment Ctr. of Desoto, Tex.,
Inc. v. Mason, 143 S.W.3d 794, 799 (Tex. 2004); Union Pump Co. v. Allbritton, 898 S.W.2d
773, 776 (Tex. 1995). Courts are to apply a practical test of common experience to human
conduct when determining legal causation. Allbritton, 898 S.W.2d at 775 (quoting Springall
v. Fredericksburg Hosp. & Clinic, 225 S.W.2d 232, 235 (Tex. Civ. App.--San Antonio 1949,
no writ)); see also City of Gladewater v. Pike, 727 S.W.2d 514, 518 (Tex. 1987). The
determinative facts are not disputed. Unfortunately, the child placed his fingers in the hinge
side of the door, a place which would be an apparent danger to an adult even without a
malfunctioning mechanism. 

 Considering only the pleadings, undisputed facts, and reasonable inferences, the Texas
Tort Claims Act does not waive the County's immunity to liability for this claim, and
therefore the Act does not waive the County's immunity to suit. See Tex. Civ. Prac. & Rem.
Code Ann. §§ 101.022(a); 101.025(a); and 101.059. The trial court lacks jurisdiction and
the claim must be dismissed. 

 _________________________________

 DAVID GAULTNEY

 Justice 

 

Concurrence Delivered

September 28, 2006

 
1. Tex. Civ. Prac. & Rem. Code Ann. §§101.001 - .109 (Vernon 2005 & Supp. 2006).
2. For ease of reference, we will use the term "sovereign immunity" to reference both
sovereign immunity and governmental immunity. We do, however, recognize that they are
distinct concepts. See Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003). 

3. See, e.g., Tex. Gov't Code Ann. § 554.0035 (Vernon 2004).
4. Justice Thomas Jefferson is now the Chief Justice of the Texas Supreme Court.
5. Although not alleged by the Smarts, we note that the Tort Claims Act expressly excludes
attractive nuisance as a basis for waiver of sovereign immunity. Tex. Civ. Prac. & Rem. Code
Ann. § 101.059. 
6. Indeed, short of adjusting the closing mechanism to have the door remain ajar at all
times, we can only speculate, from the record provided to us, what other steps the County could
have taken to have effectively "child-proofed" the restroom door. 
7. In Lower Neches Valley Auth. v. Murphy, 536 S.W.2d 561, 563-64 (Tex. 1976), the
Supreme Court reversed this Court and found no duty by the governmental unit to warn a minor
licensee of, or make safe, a canal into which the minor had dived, injuring himself. In setting out
the facts of the case, the Supreme Court described the minor as follows: "Wendell was fourteen
years old at the time of the accident and is at least of average intelligence for his age." Id. at
562 (emphasis added). Because the record included testimony from Wendell indicating he had
the same knowledge of the canal's "dangerous humps," the Court found the governmental unit
violated no duty to Wendell. Id. at 563-64.